Imogene ANDERSON, Administratrix of the Estate of June Odell Anderson, Deceased, Plaintiff-Respondent,

v.

Jackie R. ROBERTSON, John T. Slaner and Mrs. Mason A. Sachse, Defendants,

Jackie R. Robertson, Defendant-Appellant.

No. 32191.

St. Louis Court of Appeals.
Missouri.
April 19, 1966.

Manuel Drumm, Sikeston, for appellant.

Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, for respondent.

CLEMENS, Commissioner.

This is a wrongful death action arising from an automobile collision in Cape Girardeau. The decedent, June Odell Anderson, was a passenger in a small sports car, driven by defendant Robertson and owned by defendant Slaner, when it collided with the rear end of a large sedan operated by defendant Mrs. Sachse. The trial court directed a verdict for the owner of the sports car, defendant Slaner, and the jury exonerated the driver of the sedan, defendant Sachse. The administratrix got a $10,000 verdict against the defendant sports car driver, Robertson, whom we will call the defendant. He alone has appealed.

The defendant presents an array of challenges to the judgment. In the order of occurrence: (1) The court erred in refus-

ing to grant defendant's challenge to a venireman who equivocated as to having formed an opinion on the issue of liability. (2) The court erred in permitting a nine-year-old boy to testify about the defendant's speed. (3) The court erred in applying the Dead Man's Statute to the defendant after he had testified as plaintiff's witness. (4) The court erred in permitting the jury to see a police report on which there was a notation, only partly concealed, showing the defendant's arrest for drunken driving. (5) The court erred in permitting plaintiff to argue that there was a financial loss of $15 a week, since that amount represented payment for the decedent's room and board. (6) The $10,000 verdict is excessive.

Since the sufficiency of the evidence is not questioned, a brief statement of the facts consistent with the verdict will suffice to set the background for the six points raised by the defendant.

The decedent was a 27-year-old, unmarried secretary, an acquaintance of the defendant. On a sunny, summer afternoon he had borrowed the open-topped sports car of defendant Slaner to get refreshments for a party. Enroute, while stopped at a tavern, he met June Anderson, who accepted his invitation to join mutual friends at the party. They drove north on U. S. Highway 61 along the outskirts of Cape Girardeau, where the highway has four wide lanes, flanked by paved shoulders. They topped a crest, and starting down a long, gentle slope they had an open view for some 1,600 feet ahead. Halfway down this slope, on the right side, was the intersection of Marilyn Drive leading east into a subdivision, where defendant Sachse lived. She, too, had been driving north on Highway 61, at a speed of 30 miles an hour. A block short of Marilyn Drive she had turned on her right-turn signal. According to his own estimate the defendant was then driving 45 to 50 miles an hour. He did not see Mrs. Sachse's car until he was 100 feet behind it, nor did he realize she was slowing down to make a right turn. Without either swerving or slackening his speed the

defendant drove into Mrs. Sachse's car, the right side of the sports car hitting the left-rear fender of her sedan. The sports car then careened out of control, first to the left and then to the right, coming to rest in a ditch along the right side of the highway, 200 feet beyond the point of collision. Somewhere along this last segment of the defendant's path, June Anderson was thrown from the sports car onto the pavement. She was killed instantly. Other evidence will be related as it applies specifically to the points raised.

At 5 Am.Jur.2d, Appeal and Error § 772, it is said: "The necessities of judicial administration require that courts of first instance be vested with a large measure of discretion in passing upon various matters which cannot, in their nature, be effectively reviewed on the cold record transmitted to the appellate court." With the sole exception of the point concerning the Dead Man's Statute, every error charged here must be determined by deciding whether the trial court abused its judicial discretion. It seems appropriate, therefore, to say what we mean by judicial discretion and the abuse thereof.

Paraphrasing the rulings of this court in Harriman v. Harriman, Mo.App., 281 S.W.2d 566[4], and that of the Supreme Court of Alabama in Mullins v. Board of Education of Etowah County, 249 Ala. 44, 29 So.2d 339, we say first that judicial discretion is the option the trial judge has in doing or not doing a thing which cannot be demanded by a litigant as an absolute right. In a minority of early American cases it was held that matters resting in the judicial discretion of a trial court could not be reviewed on appeal. Such a principle, however, would cast the trial judge in the role of a tyrant—a role repulsive to the principles of justice. State v. Cummings, 36 Mo. 263, l. c. 278, 279. Early Missouri cases rejected the minority rule. Our courts joined the majority in adopting the principle that discretionary matters are reviewable because "the ultimate responsibil-

ity for every judgment rests upon the court of final resort." Feurt v. Caster, 174 Mo. 289, 73 S.W. 576[2]. See Bowers, The Judicial Discretion of Trial Courts, § 16, p. 29.

■ Reverting now to the Harriman and Mullins cases, supra, we say that judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. It is, however, a principle deep within our law that on appeal from a trial court's discretionary ruling it is presumed that the ruling is correct, and that the burden of showing abuse of that discretion is on the appellant. Stewart v. Small, 5 Mo. 525, l. c. 528; Funkhouser v. How, 18 Mo. 47, l. c. 49; and cases listed in 3 Mo.Dig., Appeal and Error, ⬤901. When appellate courts are called upon to apply this test, it is well to heed the words: "If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Delno v. Market St. Ry. Co., C.C.A.Cal., 124 F.2d 965, 967. Bowers, The Judicial Discretion of Trial Courts, §§ 12 and 17, pp. 20 and 33.

■ Initially, defendant urges us to reverse the trial court for denying his challenge to venireman Siemers. Several veniremen had read a newspaper account of the collision, and Mr. Siemers recalled it in detail. A double-barreled, complex question was put to him, asking whether he could render an impartial verdict or whether the reading of the newspaper story had caused him to form an opinion about the collision that he could not strike from his mind. He answered obscurely, "I would rather say it probably would, yes." Then:

"THE COURT: You are saying that you feel from your knowledge of reading the newspaper account that you have such a strong idea about what happened in this case that you cannot sit here as a juror and listen to the evidence and make up your mind concerning the case on the basis of the evidence?

"MR. SIEMERS: On the basis of the evidence I believe I could, yes.

"THE COURT: In other words, your memory of the newspaper account and what you decided from that is not strong enough to keep you from making up your mind in this case on the basis of the evidence?

"MR. SIEMERS: No.

"THE COURT: All right. I'm not going to take this man off if that is his feeling."

The defendant cites cases holding that a litigant is entitled to an impartial jury and points to § 494.190, RSMo 1959, V.A.M.S., which disqualifies a venireman who has formed or expressed an opinion that may influence his judgment. To sustain his point, defendant construes Mr. Siemers' first answer as showing that he had formed an opinion that would influence his judgment. Defendant's argument ignores the venireman's answers to the court's question. They showed that he had not formed such an opinion but would be guided by the evidence. This was an issue directed to the sound discretion of the trial court, and its ruling may be disturbed only if that discretion is manifestly abused. State v. Jones, Mo., 384 S.W.2d 554[1, 2]. We hold that when the venireman first asserted but then on further inquiry denied he had formed a disqualifying opinion, the trial court did not abuse its discretion by refusing the challenge for cause. This point is ruled against the defendant.

■ Defendant next objects to part of the testimony of the only eye-witness to the collision, nine-year-old Blane Nagel. He had been playing whiffle ball on a lot at the northwest corner of Highway 61 and Marilyn Drive. The boy testified in detail about the movements of each car before

and after the collision, and then was asked if he observed whether the defendant's sports car was going fast or slow. Over defendant's objection Blane was permitted to answer, and he said: "It was going pretty fast." Defendant complains that Blane had not demonstrated the necessary qualifications to give an opinion of defendant's speed.

We are not convinced that it was error to admit this testimony. The admission or exclusion of opinion testimony is largely within the discretion of the trial court. See cases at 12A Mo.Dig., Evidence, ☞546. Further, it has been held proper for a non-expert witness to testify that a vehicle "was going very fast." State v. Watson, 216 Mo. 420, 115 S.W. 1011[2]; Burke v. Shaw Transfer Co., 211 Mo.App. 353, 243 S.W. 449[3]. But we need not rule that issue. Note that the defendant himself testified he was driving 45 to 50 miles an hour in a 45 m.p.h. speed zone. He was hardly prejudiced by the boy's opinion that he "was going pretty fast." Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353[6]. As to this point, we find no error materially affecting the merits of the action; so, we may not reverse. Civil Rule 83.13(b), V.A.M.R.

The defendant's next point concerns the Dead Man's Statute. Plaintiff called the defendant to the stand as his own witness. After extensive questioning, plaintiff surrendered the witness for examination by his own counsel. The first question put to him was whether June Anderson had told him to slow down or had criticized his driving. Plaintiff interposed the objection of the Dead Man's Statute, and it was sustained. Faced with this adverse ruling, the defendant made a proffer "that at no time did June Odell Anderson make complaint or give any statement as to the manner in which the vehicle in which she was riding was being operated." The proffer was denied. The defendant was questioned further by his own counsel and also by counsel for defendant Sachse, with no

further attempt by plaintiff to interpose the Dead Man's Statute. In none of this was there any reference to June Anderson's conduct. We mention this to show that there was no evidence beyond the quoted proffer to support defendant's claim of contributory negligence by June Anderson.

With commendable frankness the plaintiff admits that he waived the Dead Man's Statute by interrogating the defendant as his own witness, and confesses that the trial court erred in sustaining his objection. He contends, however, that the error did not prejudice the defendant.

The defendant argues here that the exclusion of the proffered testimony deprived him of his "sole opportunity to show the contributory negligence of said June Odell Anderson upon which a proper instruction could later have been given by the Court." This is his only complaint, and its fallacy is that the admission of the proffered testimony would not have warranted a submission of the defense of contributory negligence. Liability for negligence arises only when three elements exist: a duty, a breach of that duty, and causation. The proffered testimony that June Anderson had not complained of the defendant's driving would be material only if the defendant produced further evidence showing that she had a duty to warn him, and that the collision was the direct result of her failure to warn. The record does not establish those two elements, duty and causation. The duty of a passenger to warn a driver arises only when there is a visible lack of caution by the driver. Toburen v. Carter, Mo., 273 S.W.2d 161[2]. There was no evidence of a visible lack of caution by the defendant driver. True, he had "two beers" with June Anderson earlier that afternoon. True, just before the impact he was driving 45 to 50 miles an hour in a 45 m. p. h. speed zone. These facts are insufficient to establish a lack of caution by the defendant which was visible to June Anderson. Ketcham v. Thomas, Mo., 283 S.W.2d 642[3, 4, 6]. It was not shown,

therefore, that she had a duty to complain or warn. And, even if we were to assume this element, the record is still bare of any evidence that a complaint or warning by June Anderson would have prevented the fatal collision. Accordingly, we rule that the exclusion of the defendant's statement of no complaint by June Anderson was not prejudicial because it did not, as he contends, deprive him of the right to submit the defense of contributory negligence of his guest passenger.

■ Defendant's next point is that the trial court erred in permitting plaintiff to display a police report containing an admissible plat but also containing an inadmissible report of the defendant's arrest for "C & I Driving while drinking." The exhibit was a printed form on which the policeman had drawn a plat showing the scene of the accident with symbols showing the positions of the two cars. Below this there were eight lines of typewriting describing the collision, and after the printed words "Show Arrests and Charges" the typed words "Jackie R. Robertson * * * C & I Driving while drinking." Defendant objected to display of the exhibit because of this last phrase. The court said the exhibit could be admitted if that part was covered. A piece of paper was then put over the objectionable part, but defendant's counsel protested that he could still read the words "C & I Driving while drinking" through the covering paper. The judge evidently thought otherwise, for he explained to the jury that the covered portion was not for their inspection and directed them not to peep under the covering paper. Under the court's scrutiny, the exhibit was passed among the jurors. Later, in chambers, there was testimony about the legibility of the covered portion. The judge acknowledged that it could be read then and there, but said that the jury had been admonished not "to peep" and it was not obvious that they had seen it. The defendant's motion for a mistrial was denied.

■ In reviewing this ruling we must indulge the presumption that the trial court exercised its discretion soundly, and absent a showing of manifest abuse we may not interfere. Paepke v. Stadelman, 222 Mo. App. 346, 300 S.W. 845 [9]; Conrad v. Twin Oaks, Inc., Mo.App., 344 S.W.2d 286[5]. Here, the trial court was confronted first with a dual, factual issue: whether the jury could, and did, read the inadmissible part of the police report. The defendant has included the police report in the transcript, but not the paper covering through which, he says, the jury could have read the inadmissible part. Thus, we cannot independently assess the issue of legibility. The other issue before the trial court was whether the jury could deliberate dispassionately on the merits of the case in view of what had occurred. The jury had examined the exhibit under the judge's scrutiny, and he was in the best position to determine whether the jury had read the objectionable part of the exhibit. The trial court had seen and heard all that occurred and was in a better position than we are to decide whether the drastic remedy of a mistrial was required. The record does not demonstrate that the trial court acted arbitrarily or without careful consideration, and we rule this point against the defendant.

■ As said, the defendant raises two points as to damages. First, he contends the court erred in overruling his objection to part of plaintiff's closing argument. Plaintiff was arguing inferentially that June Anderson's parents had sustained a financial loss of $15 a week. Defendant objected on the ground that there was no such evidence. On direct examination, June Anderson's mother had testified that her daughter paid for numerous household expenses, and she said that June's average weekly contribution to the support of her parents was $15. Then, on cross-examination:

"Q. In other words, in exchange for her shelter, that is, a place to sleep there and live at the trailer and for the food

that she ate she would buy part of the groceries and pay the utilities?

"A. Yes. You heard me say that she ate one meal a day because she ate out at noon and at other times.

"Q. But you believe that about $15.00 a week would cover her contribution to groceries, utilities, telephone bill?

"A. That is what I'd say. * * *"

The court ruled that the jury would have to follow the evidence, and told counsel to proceed. Plaintiff's argument as to financial loss of $15 a week was a permissible inference he could draw from the evidence construed favorably to plaintiff. In his role as advocate, counsel is allowed a wide latitude in arguing inferences from the evidence. Harp v. Illinois Central Railroad Co., Mo., 370 S.W.2d 387[17]. And, a trial court is granted a broad discretion in judging the propriety of argument and whether its effect is prejudicial. Kiger v. Terminal Railroad Ass'n of St. Louis, Mo., 311 S.W.2d 5[9]. We find no abuse of discretion here, and this point is ruled against the defendant.

■ Second, the defendant contends the $10,000 verdict was excessive. Plaintiff's evidence was that June Anderson was an only child who had always lived with her mother, a 44-year-old, unemployed housewife, and her father, a 52-year-old, unemployed, heavy-equipment operator. June was a high school graduate with secretarial training and she earned $52 a week. She made no specific payment for her room nor the one meal a day she ate at home; but she paid all the utility bills for the family home, bought some groceries, paid the maintenance expenses of her parents' car, and gave her mother spending money

from time to time. She thereby contributed an average of $15 a week in money toward family expenses. In addition, June ran errands and helped her mother with housework and shopping. The plaintiff had paid a funeral bill of $1,147.45. Thus, there was substantial evidence of pecuniary loss by June Anderson's parents.

■ The defendant cites no case indicating this verdict is excessive. The legislative intent of our wrongful death statutes (§§ 537.080 and 537.090, RSMo 1959, V.A.M.S.) is "to give the jury a broad discretion in computing damages in actions for wrongful death, within the limit prescribed, based upon the pecuniary loss of every kind and character which, under all the circumstances of the particular case, will be sustained by those entitled to recover as a direct result of the death, * * *." Steger v. Meehan, Mo., 63 S.W.2d 109[12]. Time and again our appellate courts have ruled that the jury has an extraordinarily wide discretion in determining the amount of compensation in a wrongful death action, and that such discretion should not be interfered with unless it has been clearly abused. Greenwood v. Wiseman, Mo., 305 S.W.2d 474[3]; Domijan v. Harp, Mo., 340 S.W.2d 728[14]. The trial court did not abuse its discretion in denying a new trial on this ground.

Finding no prejudicial error, the judgment should be affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.