Dennis Paul HUGHES, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 57983.

Supreme Court of Missouri,
Division No. 1.

March 11, 1974.

Motion for Rehearing or to Transfer to Court
En Banc Denied April 8, 1974.

Joseph W. Toeniskoetter, St. Louis, for appellant; Maurice Waxelman, St. Louis, of counsel.

John C. Danforth, Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief in proceeding under Rule 27.26, V.A.M.R., to set aside judgment of conviction and sentence to life imprisonment resulting from jury verdict finding appellant Dennis Paul Hughes guilty of murder in the first degree.

Hughes was charged with murder in the death, on December 24, 1968, of Miss Minnie Putterman in St. Louis. At his trial, the state adduced testimony of police officers who had interrogated Hughes as to his admission to having killed Miss Putterman. The state also adduced evidence that a fingerprint on a knife found at the scene of the crime was that of Hughes.

The evidence of the defendant in the case consisted of deposition testimony of an acquaintance of Hughes that he had talked by telephone with Hughes at a time near that at which the victim's death occurred. The defendant also offered the testimony of the janitor of the apartment building in which the victim lived to the effect that the only person he saw in the apartment lobby around the time of Miss Putterman's death was a white man.

Hughes testified at a motion to suppress his statements and denied having made any statement to the interrogating officers. He was not called as a witness at the trial. On the 27.26 hearing Hughes testified that he requested his appointed trial counsel to permit him to testify at the trial. He testi-

fied that he discussed such action with trial counsel and that the discussion included consideration of the fact that Hughes had no prior criminal record, but that trial counsel's "definite" advice was that he not take the stand and that he "took their advice because [he] had no alternative." He testified that had he been called as a witness he would have denied any connection with Miss Putterman's death.

The only other witness at the 27.26 hearing, movant's mother, testified that during the trial she asked her son's counsel why her son couldn't take the stand to defend himself and counsel gave her no answer.

On this appeal, the sole claim of error is that the trial court erred in failing to find that movant was denied effective assistance of counsel for the reason that trial counsel deprived him of the right of testifying in his own behalf.

The trial court's finding on this issue was:

"The real issue in the Motion, if there is one, lies in paragraph 8(f) where movant alleges that movant was accorded ineffective assistance of counsel because 'counsel *failed* (emphasis added) to allow movant to testify in his own defense after movant had requested that he be so permitted.' Assuming that this assignment presents a valid grievance, (Talley v. State, Mo., 477 S.W.2d 123) the Court finds that movant's counsel in the original case performed the following: 1) Filed Motion For Psychiatric Examination supported by affidavit, which was granted.

"2) Filed Motion To Suppress Evidence.

"3) Entered into trial of case and completely tried the case.

"4) Filed Motion For Acquittal at the close of the State's case.

"5) Filed Motion For Judgment For Acquittal at the close of all the evidence.

"6) Filed Motion For Judgment of Acquittal and Motion For New Trial.

"7) Filed Notice of Appeal.

"8) Took pre-trial depositions of five persons.

"9) Presumably filed briefs in the Missouri Supreme Court.

"The burden of proving his grounds for relief rests with the movant. McClure v. State, Mo., 470 S.W.2d 548.

"The Missouri Supreme Court has said that in order to sustain a Motion based upon the ground of lack of effective counsel, the movant has a heavy burden to carry, and it is recognized that counsel is vested with broad latitude in the conduct of the defense and is not to be adjudged incompetent and his client deemed denied effective assistance of counsel by reason of what, in retrospect, appears to be errors of judgment or trial strategy. State v. Wilkinson, Mo., 423 S.W.2d 693; State v. Turner, Mo., 353 S.W.2d 602; White v. State, Mo., 430 S.W.2d 144; State v. Phelps, Mo., 384 S.W.2d 616; McQueen v. State, Mo., 475 S.W.2d 111; State v. Keeble, Mo., 399 S.W.2d 118; State v. Hooper, Mo., 399 S.W.2d 115; State v. Washington, Mo., 399 S.W.2d 109.

"The Court finds that the movant was capably and adequately represented by counsel and it taxes the imagination to conclude that movant would have been prevented from testifying had he so desired. This assignment is ruled against movant."

This finding is not clearly erroneous. Rule 27.26(j). From the movant's testimony it is apparent that counsel did discuss with movant the question of movant's testifying at the trial. Furthermore, it is evident that the considerations involved were discussed, including the absence of prior convictions of movant. The result of the discussions was counsel's advice that movant not testify in his own behalf and movant's acceptance at that time of such advice.

■ Movant has demonstrated nothing more than that his trial counsel gave him certain advice on a question of trial strate-

gy. It is well settled that a hindsight disagreement as to the wisdom of such a strategic, professional decision may not be the basis for a successful charge of inadequate assistance of counsel. State v. Moore, 435 S.W.2d 8, 15[13] (Mo. banc 1968); State v. Cook, 440 S.W.2d 461, 465[7] (Mo. 1969); Robinson v. United States, 448 F. 2d 1255 (8th Cir. 1971).

On this appeal, appellant's counsel argues strenuously that the attorney's advice had the effect of depriving movant of his fundamental right to testify in his own behalf and asserts numerous reasons for questioning the advice which the attorney gave. A well-reasoned answer to such argument appears in United States v. Garguilo, 324 F.2d 795, 797 (2d Cir. 1963):

"* * * The decision whether to place a defendant on the stand in a criminal case is always a difficult one—indeed, probably the most difficult decision for a defendant and his counsel to make. Experienced trial counsel will often differ as to the wisdom of such a course in a particular case; varying answers are possible as the advantages of a defendant's testimony are weighed against the potential hazards of a vigorous cross-examination. Similarly, the advisability of calling particular witnesses or the value of extensive cross-examination are matters open to honest differences of opinion—especially where, as here, the evidence to be elicited would not have directly rebutted the strong case against the appellant. [footnote omitted] Compare Brubaker v. Dickson, 310 F.2d 30 (9th Cir. 1962), cert. denied, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963). It may well be that another attorney would have resolved these problems differently and that Garguilo would have profited by sounder advice. Yet this in no way suggests that he has been denied a fair trial, or that the errors of counsel were so outrageously incompetent as to shock the conscience of the court.

"[7] It thus seems clear that Garguilo is merely complaining of alleged tactical errors or mistakes in strategy, and for these we can grant no relief. United States v. Duhart, 269 F.2d 113 (2d Cir. 1959). Even assuming counsel to have erred in the respects alleged, the petition was properly denied. When reviewing cases charging incompetence of counsel, we are seeking to vindicate the most fundamental of rights. We are not conducting a seminar in trial procedures, at least where the tactics involved are those over which conscientious attorneys might differ. If Garguilo were to be afforded a hearing on the allegations presented here, our trial and appellate dockets would be swollen with incompetence of counsel cases. A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence. A long stretch in prison, furthermore, affords ample opportunity to reflect with twenty-twenty hindsight upon the tactical errors of one's attorney, and to point to those instances where a Clarence Darrow or even the defendant without counsel might have handled things a shade differently."

■ The findings of the trial court in the case are not clearly erroneous. Therefore, the judgment is affirmed. Crosswhite v. State, 426 S.W.2d 67, 70[1] (Mo. 1968).

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

BARDGETT, P. J., and HOLMAN, J., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

SEILER, Judge (concurring in result).

As will be seen by examining State v. Hughes, 460 S.W.2d 600 (Mo.1970), defendant, according to the state's evidence, had made damaging admissions to the po-

lice. Defendant's counsel had to realize that had defendant taken the witness stand in the case to deny any connection with the killing, the prosecution had available powerful ammunition to level against defendant by cross-examination—i. e., defendant's admissions to the police of his connection with the crime. We cannot say that it was ineffective assistance of counsel for counsel under these circumstances to advise defendant not to testify and that is as far as we need to go in disposing of this appeal.

I do not subscribe to the implication of the quotation from United States v. Garguilo, 324 F.2d 795 (2d Cir. 1963), that errors of counsel must be "so outrageously incompetent as to shock the conscience of the court" before there can be ineffective assistance of counsel. Our rule 4, Canon 6, requires that a lawyer should represent a client competently, which I consider to be a standard demanding more than representation which simply manages to avoid "shocking the conscience of the court." I see no room for a double standard—a high standard for law business in general and a lower standard for defense of criminal cases.