STATE of Missouri, Respondent,

v.

Reginald L. POWELL, Appellant.

No. 70518.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1990.

Rehearing Denied Dec. 18, 1990.

Scott E. Walter, Clayton, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Reginald Love Powell, age 18 at the time of his killing Freddie Miller and Lee Miller, was jury-tried and convicted of two counts of first degree murder [§ 565.-020, RSMo 1986] for the fatal stabbings of the Miller brothers, following a brutal beating of the victims during the course of a robbery. The jury could not agree on the matter of punishment and the trial judge, finding three statutory aggravating circumstances, sentenced defendant to death on both counts. Defendant's postconviction motion for relief was, after a lengthy evidentiary hearing, denied. Affirmed.

### Direct Appeal

Initially, the Court notes that defendant's motion for a new trial contains 72 points and a number of subpoints as alleged assignments of error and, in addition, reiterates the substance of some twenty pretrial motions and arguments thereon. And, his brief avers 43 points plus subpoints as error. Many of the points are not properly preserved for appellate review. Some border on the frivolous and others are without support in the record. In addition, many of the contentions and allegations in the pretrial motions, motion for new trial, and brief herein, ignore decisions of this Court which have repeatedly rejected the same arguments. The Court suggests that scatter-load attacks do not comport with the rules of this Court and tend to obfuscate the ultimate issue of appellate

review, namely, whether the defendant received a constitutionally mandated fair trial free of reversible error.

Viewed in the light most favorable to the verdict, *State v. Guinan*, 665 S.W.2d 325, 327 (Mo.banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984) the facts are as follows:

On the evening of November 14, 1986, the defendant had been drinking at a friend's house in the city of St. Louis. After about twenty minutes, defendant, Lee McDowell, Eric Times, and another youth nicknamed "Diamond" went to a liquor store, where they saw Freddie and Lee Miller, and asked them to purchase some liquor for them. Defendant was eighteen years old at the time, and his companions were sixteen or younger. After some argument, the Miller brothers refused defendant's request.

Some time later that evening, the group went to the apartment of a friend of defendant's, again seeking to procure some liquor. One of the Miller brothers also lived in the building, and the group encountered the two victims in the backyard. Both of the brothers were intoxicated, one so much so that he was having difficulty standing.

Defendant's stepbrother, Calvin Courtney, age fifteen, went to the building looking for one of his friends. Courtney was attempting to help the Miller brothers into the backyard when defendant arrived. Defendant asked Courtney who he was, and when Courtney replied, defendant said: "Oh, I didn't know who it was, because we were getting ready to rob you" and, "Man, I have been around all day robbing people."

Upon seeing the victims, defendant stated: "These niggers are who I had the squabble with right here, man" and he or one of the others said, "Let's rob the niggers." After one of the victims called the youths "punks," defendant pushed and kicked the brothers to the ground and said, "Get them." A brutal beating of the brothers followed.

While defendant kicked the two brothers in the face, chest and groin, Lee McDowell, Eric Times and "Diamond" joined in, beating the victims with bricks, boards and branches. When the victims tried to get up, the group kicked them back down. Calvin Courtney tried to get the defendant to stop. Defendant stopped for a minute, and Courtney told him who the victims were. Defendant said "My baby needs some Pampers" and resumed beating the two brothers. Lee Miller begged for his life, saying "You can beat me all you want, but don't kill me."

After the rest of the group had their fill and Lee and Freddie Miller were lying on the ground, defendant jumped up and down on the chests of both victims, breaking all but the top ribs of each. Defendant then searched the victims for valuables, pulling Lee Miller's pants down in the process. McDowell and Times joined in the search, which yielded only three dollars and a pack of cigarettes. The defendant remarked that this was the third person they had robbed that day and still had not gotten any money. After the beating and robbery of the Miller brothers, all of the persons present left the scene, leaving only the defendant and the two victims.

Prior to the robbery, the defendant had borrowed a butterfly knife (a martial arts weapon with handles that fold away from the blade) with a six inch blade from Eric Times. As Lee and Freddie Miller lay there, beaten, broken and bleeding, but still alive and moaning in pain, defendant Reginald Powell stabbed them three times each in the chest and abdomen, the stab wounds being from five to six inches in depth. Lee Miller apparently attempted to resist, as a laceration consistent with a "defense wound" was found on his right hand. Both brothers died from internal bleeding caused by the multiple stab wounds.

After stabbing the two brothers to death, the defendant caught up with McDowell, Times, "Diamond" and Courtney. He was carrying the bloody knife which he cleaned by sticking the blade into the ground, and had blood on his shoes. He told them that he had "stuck" and "stabbed" the victims, and said, "Don't bring no knife if you ain't going to use it."

The group proceeded to the home of defendant's aunt, where defendant cleaned the blood from his shoes and told his aunt how he had "jumped on some dudes" and beat them up. He was arrested on the street the next day, after Calvin Courtney had spoken with the police. After the police had advised the defendant on three occasions of his *Miranda* rights, he made a tape recorded statement, admitting to the murders and saying, "You know, we'll say I had the last—the last laugh."

In his principal point of error, defendant asserts that his tape recorded statement was improperly admitted into evidence because it was not made after a voluntary, knowing and intelligent waiver of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant does not contend that the statement was not voluntary, rather he asserts that he lacked the mental capacity to knowingly and intelligently waive his rights under the United States and Missouri Constitutions.

Defendant filed a motion prior to trial to suppress his recorded statement, alleging, *inter alia*, that his level of mental function was such that he was unable to understand and comprehend the written and verbal *Miranda* warnings given him. A suppression hearing was held and the trial court concluded defendant's statement was admissible under *Miranda*.

Defendant's attack upon his comprehension of the *Miranda* warnings consisted entirely of testimony from three psychological witnesses retained by the defense who administered various intelligence and comprehension tests to defendant. Based on these tests, which indicated in part that defendant had an I.Q. of between 65 and 83, the witnesses testified that the defendant had difficulty understanding complex sentences and would be unable to understand the *Miranda* warnings. No direct evidence was presented that defendant did not, in fact, understand the warnings. Not a one of these three witnesses read the *Miranda* warnings to defendant to ascertain if he understood them. Neither did they explore whether defendant was famil-

iar with these rights by reason of previous criminal proceedings (defendant was on probation of a criminal conviction and another criminal charge was pending at the time of the killing of the Miller brothers) or watching television.

Detective Gooch of the St. Louis police department testified that he had given the defendant *Miranda* warnings three times prior to the time defendant made his statement. The first time was when defendant was arrested. The second time shortly after he arrived at the police station. And, the third time a short period later just before he made the statement. The last time is recorded on the tape of defendant's statement:

Q. You have the right to remain silent. Do you understand it sir?

A. Yes.

\*   \*   \*   \*   \*   \*

Q. Anything you say can and will be used against you in a court of law. Do you understand that sir?

A. Yes.

Q. You have a right to an attorney. Do you understand that, sir?

A. Yes.

Q. If you can't afford one, one will be applied [sic] to you by the state. Do you understand that?

A. Yes.

Q. Do you understand your rights?

A. Yes.

The defendant appeared to be reading along on the waiver form as the rights were explained to him, and he signed the waiver form after making the statement.

The court denied the motion, finding that "the evidence seems to indicate that he did [understand his rights]. He indicated so on the tape. He said he understood them." And, "The expert testimony given only indicates that according to the psychological and educational tests given, they would not expect him to understand. However, he definitely, himself, said that he did. I listened to the tape...."

■ The requirement that a waiver of rights be knowing and intelligent does not mean that a defendant must know and understand all of the possible consequences of the waiver. *Colorado v. Spring,* 479 U.S. 564, 574–75, 107 S.Ct. 851, 857–58, 93 L.Ed.2d 954 (1987). Rather, it requires that the defendant understood the warnings themselves; "that he at all times knew that he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction." *Moran v. Burbine,* 475 U.S. 412, 422, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).

When a defendant moves to suppress a statement as taken in violation of the *Miranda* doctrine, the state bears the burden of proof that the defendant properly waived his rights. This burden is one of the preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In each case, the totality of circumstances must indicate that the waiver was voluntary, knowing and intelligent. The question of waiver is one of fact, and the trial court's findings of fact concerning waiver will not be overturned unless clearly erroneous. *United States v. Dougherty,* 810 F.2d 763 (8th Cir.1987). Conflicts in the evidence and the credibility of witnesses are matters for the trial court to resolve. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo.banc 1986).

After a review of the entire record, including listening to the tape, this Court concludes that the trial court's determination that defendant waived his rights knowingly and intelligently under the totality of the circumstances surrounding his confession is supported by substantial evidence and was not clearly erroneous. Consequently, the admission of defendant's confession was not error.

Defendant next contends that the Missouri death penalty, *§ 565.020, RSMo 1986,* and related statutes, deny him due process and equal protection of the laws because he claims he is retarded and the death penalty scheme "does not comport with a heightened scrutiny test as applied to [defendant] and [defendant's] class;" that the presen-

tence investigation should have been prepared by a neuropsychiatrist; that prosecutors have the discretion to seek or waive the death penalty; and because the judge is permitted to impose sentence when the jury is unable to agree on the issue of punishment.

Although it is questionable as to whether defendant properly raised and preserved these multifaceted constitutional challenges and therefore they should be deemed waived under *State v. McMillin,* 783 S.W.2d 82 (Mo.banc), cert. denied, —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990), the Court will briefly consider each of these assignments.

■ Defendant misapprehends the nature of equal protection. The Missouri death penalty scheme does not statutorily classify defendants based upon whether or not they are retarded, rather, it allows defendants suffering from some mental disease, defect or impairment to present evidence of their alleged condition to negate a required mental state or in mitigation of punishment. Because these are additional protections, required only when requested by defendant, there is no sense in which defendant is denied equal protection of law. *Arlington Heights v. Metropolitan Development Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

■ While citing no pertinent authority, defendant argues that the Missouri death penalty scheme holds mentally impaired defendants to the same standards as those not so impaired and thus violates the due process requirement of individual sentencing.

Defendant is in error. *Section 552.015.- 2(8),* allows the admission of evidence of mental disease or defect "to prove the defendant did or did not have a state of mind which is an element of the offense". Such evidence was presented at trial and the question was submitted to the jury by proper instruction in the guilt phase of the trial. The jury was likewise permitted, under proper instruction, to consider such evidence in the penalty phase of the trial as a mitigating circumstance.

The Constitution "require[s] that the sentencer not be precluded from considering as a mitigating factor any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). However, as demonstrated, evidence of defendant's alleged mental deficiencies was before the jury and the sentencing judge. The judge stated at the time that he assessed punishment that he had specifically taken into account the defendant's mental condition, youth, and background. The defendant fails to point out any instance in which the trial judge refused to consider any aspect of defendant's condition or character. *Eddings v. Oklahoma,* 455 U.S. 104, 116, 102 S.Ct. 869, 877–78, 71 L.Ed.2d 1 (1982).

Defendant also makes the novel argument that the trial court denied him due process when sentencing him to death because the presentence report was not prepared by a neuropsychiatrist. Defendant cites the Court to no authority for this proposition. The point is denied.

■ Defendant contends that capital punishment is categorically unconstitutional because prosecutors have the discretion to seek or waive the death penalty. This Court has repeatedly rejected this contention. *State v. McMillin,* 783 S.W.2d 82 (Mo.banc 1990).

■ Defendant argues that imposition of the death sentence by the judge pursuant to *§ 565.030.4, RSMo 1986,* violates his right to a jury trial under *Article I, §§ 19 and 21* of the Missouri Constitution. This argument, too, has been considered and rejected by this Court. *State v. Griffin,* 756 S.W.2d 475, 487 (Mo.banc), *cert. denied,* — U.S. —, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989).

■ Defendant also contends that *§ 565.030.4, RSMo 1986,* violates due process by allowing the jury to abdicate its responsibility to determine punishment and failing to require that the jury submit written findings of aggravating factors with its verdict when it cannot agree upon punishment. Again, this argument was rejected in *Griffin,* 756 S.W.2d at 488.

In his next point, defendant makes a variety of claims in seven subpoints concerning jury instructions, mostly those given during the penalty phase. He argues that if the jury had been instructed as he maintains is proper, they may have been able to agree on punishment and not left the decision to the judge. A similar argument was found to be "no more than speculation" in *State v. Sandles,* 740 S.W.2d 169, 172–73 (Mo.banc), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988).

In his first subpoint, defendant claims that Instruction Nos. 31 and 36 (*MAI–CR 3d 313.44*) violate the holdings of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina,* — U.S. —, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), because they could be read to forbid the jury from considering mitigating factors which are not found unanimously. However in *State v. Petary,* 790 S.W.2d 243, 244–45 (Mo.banc 1990), this Court recently held on remand from the United States Supreme Court, — U.S. —, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) that *MAI–CR 3d 313.44* [1] when given in conjunction with other instructions also given in this case do not restrict the jury in violation of *Mills* and *McKoy.*

■ Defendant's next subpoint argues that the trial court erred in refusing to submit instructions on extreme mental disturbance and his capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law. The trial court found that there was insufficient evidence to warrant their submission. On appeal, defendant fails to point to any such evidence.

Defendant also alleges that the trial court erred in failing to instruct the jury on

---

1. *MAI–CR 3d 313.44* has been modified since the trial in this case. *State v. Petary,* 790 S.W.2d 243 addresses the instruction given in this case.

voluntary manslaughter and on involuntary manslaughter. The trial court found that there was insufficient evidence for either instruction, and that conclusion is clearly supported by the record.

During the penalty phase, the jury was instructed on each count that they could find three statutory aggravating circumstances: 1) that the murder was committed while the defendant was engaged in the commission of another unlawful homicide; 2) that the murder involved torture or depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible or inhumane; 3) that the murder was committed while the defendant was engaged in the perpetration or attempted perpetration of robbery. In assessing sentence, the trial judge found all three circumstances on each count. The defendant contends that these aggravating circumstances are unconstitutional.

■ In submitting that the commission of each killing may be an aggravating circumstance of the other murder, defendant maintains that the trial court erred because this results in the same fact being counted as two aggravating circumstances. This conundrum is transparent. The killing of each victim was not submitted as an aggravating factor for that victim's own murder. Thus the submission was not duplicitous. Were it otherwise, commission of multiple murders could never be submitted as an aggravating circumstance, an untenable result. There was no error. *See State v. Petary*, 781 S.W.2d 534 (Mo.banc), *vacated on other grounds*, —— U.S. ——, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), *aff'd.* 790 S.W.2d 243 (Mo.banc 1990).

■ The submission of the aggravating circumstance that the murders involved torture or depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible or inhumane is challenged as unconstitutional under the holdings of *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). A similar contention was addressed in *Griffin*, 756 S.W.2d at 490, in which this Court set forth a limiting construction of the aggravating circumstance requiring that at least one of a list of factors set forth in *State v. Preston*, 673 S.W.2d 1, 10–11 (Mo.banc), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984), be present before a finding of depravity of mind will be found to be supported by the evidence. The Court in *Griffin*, 756 S.W.2d at 490, stated that "evidence that the murder victim or other victims at the murder scene were beaten or evidence that numerous wounds were inflicted upon a victim will support the aggravating circumstance." Uncontroverted evidence that the defendant beat, kicked, and stomped the Miller brothers severely and stabbed them repeatedly was presented at trial. Photographs graphically portray the numerous wounds to the victims. The finding was not error.

■ Defendant also challenges the aggravating circumstance that the murder was committed while the defendant was engaged in the perpetration or attempted perpetration of robbery, because the evidence indicated that the robbery had been completed before the stabbings took place. However, to commit murder "while engaged in" robbery does not mean that money or property must be removed from the victim's lifeless body. Undisputed evidence established that the defendant stabbed the two victims as the culmination of a protracted and vicious robbery. Submission of the circumstance to the jury and the finding thereof by the judge was not error.

Defendant's remaining points are a hodgepodge of allegations of error: failure of the trial judge to recuse after the trial but before sentencing; denial of defendant's motion for a second jury to assess punishment; the trial judge's announcing what the sentence would be before a presentence investigation was completed and before formal sentencing; a double jeopardy argument; review by the trial judge of other cases; consideration by the court of nonstatutory aggravating circumstances; postconviction court's adoption of the State's proposed findings of fact, conclusions and order; denial of request for individual *voir dire;* failure to accede to defen-

dant's waiver of sequestration of the jury; allowing the State additional peremptory strikes; failure to have a second jury for the penalty phase; sustaining objections to some of defendant's *voir dire* questions; refusal to strike certain jurors for cause; failure of trial judge to *sua sponte* strike certain jurors; sustaining objection to defendant's statement to the jury that a life sentence without parole meant defendant would die in prison; failure to quash the grand and petit juries for a host of reasons; that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was violated; admission of photographs of slain victims; admission of defendant's statement concerning robbing people all day; lack of deliberation; improper prosecutorial argument; and, refusal to permit defense witness Dr. Decker to testify the death penalty is not a deterrent.

The Court has carefully examined each and every point and subpoint asserted by the defendant and finds no reversible error and concludes defendant received a fair trial.

Pursuant to *§ 565.035.3, RSMo 1986,* this Court must conduct an independent review of the imposition of the death penalty. The Court is required to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in *subsection 2* of *§ 565.032* and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

The Court has examined the record carefully and has found no evidence that the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor.

█ It was uncontroverted that defendant killed both victims after brutally beating and robbing the victims; these events occurred in the course of a continuing and vicious assault on the two men who were so intoxicated as to be unable to defend themselves. This evidence amply supports each of the aggravating circumstances found by the trial judge.

█ Finally this court concludes that in view of the cruel and brutal nature of the crime, and the fact that the two helpless victims were stabbed repeatedly despite a plea for life by one of them, the punishment imposed in this case is not excessive or disproportionate despite the defendant's age and intelligence. Among numerous cases considered by the Court, those most similar to the case at bar are: *State v. Sidebottom,* 753 S.W.2d 915 (Mo.banc), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988); *State v. Antwine,* 743 S.W.2d 51 (Mo.banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); *State v. Rodden,* 728 S.W.2d 212 (Mo.banc 1987); *State v. Mathenia,* 702 S.W.2d 840 (Mo.banc), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986); *State v. Grubbs,* 724 S.W.2d 494 (Mo.banc), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987); *State v. Wilkins,* 736 S.W.2d 409 (Mo.banc 1987); *affirmed sub nom. Stanford v. Kentucky,* 492 U.S. ——, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989); *State v. Battle,* 661 S.W.2d 487 (Mo.banc 1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984); *State v. Lashley,* 667 S.W.2d 712 (Mo. banc), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

### Rule 29.15

The *pro se* motion and the amended motion to vacate judgment and sentence in this case constitute gross abuse of the rules governing post-conviction proceedings. A motion under *Rule 29.15* is limited to grounds that allege the conviction and sentence are tainted by violations of *"the constitution and laws of this state or the constitution of the United States ...."* And, when an indigent movant files a *pro se* motion court appointed counsel is charged with certain responsibilities in con-

nection with the preparation and filing of an amended motion.

Here, the *pro se* motion was prepared by defendant's *trial attorney* and alleged practically each and every assignment in the motion for new trial she had prepared and sought to convert such errors into ineffective assistance of counsel grounds. The *pro se* motion consists of 63 pages and approximately 100 points and subpoints. This, in turn, was incorporated into the amended motion, which added additional charges of ineffective assistance of counsel.

As indicated, the aberrant motion for a new trial and the *pro se* motion under *Rule 29.15* were prepared by trial attorney Marianne Marxkors. At the post-conviction hearing she admitted she was the author of the "grounds" asserted therein, including all those charging her with ineffective assistance of counsel, and acknowledged she had an emotional attachment for the defendant. At the hearing she often found herself admitting many of her self-charged transgressions were the result of trial strategy but then testifying that upon reflection and hindsight she would have done things differently.

Attorney Marxkors is no novice. She is an experienced criminal defense lawyer. She has been with the public defender's office since 1982 and represented 600 to 700 defendants, tried 20 to 30 jury trials, and tried four murder cases. Her admitted emotional attachment for the defendant and expressed desire to save his life do not excuse the anomalous situation presented by the trial attorney charging herself with flagrant derelictions of duty to her client and testifying in support of such accusations. And, counsel appointed for movant had an obligation to screen the allegations of the *pro se* motion and allege as grounds only those which were supported by facts and which fall within the purview of the rule.

The motion court following an evidentiary hearing, filed findings, conclusions and order concerning all allegations in both the *pro se* and amended motions. In this appeal defendant has preserved a limited number of charges of ineffective assistance of counsel, all of which were treated in some detail by the motion court. All remaining grounds are deemed abandoned. *Rule 29.15(a), (d); Rule 84.13(a); See also Sloan v. State,* 779 S.W.2d 580, 583 (Mo. banc 1989); *Amrine v. State,* 785 S.W.2d 531, 536 (Mo. banc 1990).

Review by this court is limited to whether the findings and conclusions of the motion court are clearly erroneous. *Rule 29.- 15(j); Sidebottom v. State,* 781 S.W.2d 791, 795 (Mo. banc 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). Defendant bears a "heavy burden" in attempting to show that trial counsel was ineffective, and must overcome a strong presumption that trial counsel was effective. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo.banc 1987). To prevail, defendant must show by a preponderance of the evidence (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and, (2) that he was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sloan v. State,* 779 S.W.2d 580, 582 (Mo. banc 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990).

■ Defendant alleges that his trial counsel was ineffective because she failed to advise him of his right to testify at the guilt and penalty phases of his trial.

During the motion hearing, defendant's trial counsel testified that defendant had asked to testify, and that she had discussed it with him on at least two occasions. She stated that while he may not have thought of it as a right under the United States Constitution, the defendant had anticipated that he would take the stand as a part of the trial. Counsel further testified that she told defendant of her *trial strategy of showing that he was too mentally impaired to coolly reflect upon the consequences of his actions, and indicated to him that if he were to testify, he might appear more intelligent than the impression given by the experts who evaluated*

*him.* After discussion, she felt that he understood that the wiser strategy was for him not to take the stand, and he acquiesced in the decision. Additionally, the Assistant Circuit Attorney who assisted the prosecutor in the case testified that, in the presence of the defendant, she had discussed with defendant's attorney the possibility of the defendant testifying. Defendant appeared to be listening when defense counsel said "We talked about it and we decided not to." The motion court found this testimony credible, and denied defendant's allegation of ineffective assistance.

The decision as to whether a defendant should testify has been called "the most difficult decision for a defendant and his counsel to make." *Hughes v. State*, 507 S.W.2d 363, 365 (Mo.1974), quoting *United States v. Garguilo*, 324 F.2d 795, 797 (2d Cir.1963). Advice of counsel that a defendant not testify, without more, is not incompetence when it "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *State v. Turner*, 623 S.W.2d 4, 12 (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). The motion court's conclusion that counsel's advice to defendant concerning his right to testify did not constitute ineffective assistance is not clearly erroneous. Point denied.

Defendant also asserts trial counsel was ineffective in a point alleging a raft of shortcomings. These allegations are without merit. Defendant claims that his scores on psychological tests would have been lower if he had been tested while still suffering the residual effects of street drugs. However, it is undisputed that he did not inform counsel of his drug use until long after such effects would have abated. Defendant further complains that counsel should have objected when the prosecutor did not instruct the jury that they must find aggravating factors before returning a verdict stating that they could not determine punishment. The prosecutor's argument was not improper, because he did not misstate the law, and proper instructions were submitted to the jury. Defendant complains that counsel failed to secure the attendance of four witnesses during the guilt phase and two witnesses during the punishment phase. Of the four witnesses who did not appear during the guilt phase, counsel was unable to locate three even after substantial attempts, and they did not testify at the *Rule 29.15* hearing. The fourth testified at the *Rule 29.15* hearing and contrary to the allegation in defendant's motion, did not see defendant on the night of the murders. Both of the witnesses who failed to appear during the penalty phase did so in defiance of a subpoena. Lastly, defendant claims counsel was ineffective because she called one Minnie Barnes at trial. However, the record reveals that Minnie Barnes was not in fact called as a witness.

The motion court's findings that defendant's counsel was not ineffective are not clearly erroneous.

The judgments are affirmed.

ROBERTSON, RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., concur.

BLACKMAR, C.J., concurs in part and dissents in part in separate opinion filed.

BLACKMAR, Chief Justice, concurring in part and dissenting in part.

I concur in the affirmance of the conviction, and join in the comments in the principal opinion relating to briefing. I am not satisfied, however, that this is the kind of case in which the death sentence is appropriate. In the absence of any articulated standards for the exercise of our responsibility for proportionality review under § 565.035, RSMo 1986, I am unwilling to concur in the affirmance of the death sentence. I find it easier to vote to mitigate the death sentence because the jury was unwilling to impose the death penalty, and left sentencing to the judge.

In some death sentence cases, the defendant has carried out a planned killing for his own purposes. *See State v. Leisure*, 749 S.W.2d 366 (Mo. banc 1988); *State v. Gilmore*, 697 S.W.2d 172 (Mo. banc 1985); *State v. Laws*, 661 S.W.2d 526 (Mo. banc

1983); and, of the cases cited in the principal opinion as comparable, *State v. Sloan*, 756 S.W.2d 503 (Mo. banc 1988); *State v. Milton Griffin*, 756 S.W.2d 475 (Mo. banc 1988). To me, these are the most aggravated of the death penalty cases.

Others relied on in the principal opinion are characterized by the wanton, violent and outrageous conduct of the defendant. *State v. Sidebottom*, 753 S.W.2d 915 (Mo. banc 1988); *State v. Lashley*, 667 S.W.2d 712 (Mo. banc 1984); *State v. Battle*, 661 S.W.2d 487 (Mo. banc 1983). Those cases are more comparable to this one, but they seem to me to be more outrageous than this case. I note the following circumstances: (1) this defendant was 18 years of age; (2) the altercation grew out of a drunken spree; (3) there is no indication that killing was contemplated when the defendant and his companions started out on their course of robbery and violence. The principal opinion properly exposes the gory details, but any deliberate killing can be described in terms of the blood shed. There is no articulation of a standard to distinguish this case from other cases of first degree murder.

The plural killings certainly weigh in favor of a death sentence. Yet juries not infrequently have assessed life sentences in cases in which more than one person has been killed.[1] The plural robberies are also an indication in favor of a death sentence, but the robberies here involved seem impulsive and heavily fortified by spirits. There is no robbery in which the robbers considered from the beginning that it would be necessary to kill the victim, as there was in *State v. Johns*, 679 S.W.2d 253 (Mo. banc 1984), and *State v. Jones*, 749 S.W.2d 356 (Mo. banc 1988). Nor is there a crime spree reminiscent of *State v. Kenley*, 693 S.W.2d 79 (Mo. banc 1985).

The Court has never rested easy with its responsibility for proportionality review. The early cases regularly affirmed death sentences on the basis that there was nothing to compare.[2] The later cases are prone to search the books for cases presenting one or more comparable circumstances, following which there is a routine affirmance. I do not believe that this is what was contemplated by the legislature when it mandated proportionality review as a means of selecting the cases in which the ultimate penalty is to be exacted. The Court has proceeded by hunch. My hunch is that the death sentence in this case is out of line with other cases in which death has been decreed.

The conviction of first degree murder should be affirmed. Because of the absence of standards for proportionality review, I would reduce the sentence to life imprisonment without probation or parole.

---

1. *State v. Mitchell*, 611 S.W.2d 223 (Mo. banc 1981), *State v. Baskerville*, 616 S.W.2d 839 (Mo. 1981), *State v. Downs*, 593 S.W.2d 535 (Mo. 1980), *State v. Dunn*, 731 S.W.2d 297 (Mo.App. 1987), *State v. Clark*, 711 S.W.2d 928 (Mo.App. 1986), *State v. Carr*, 687 S.W.2d 606 (Mo.App. 1985).

2. *State v. Mercer*, 618 S.W.2d 1, 11 (Mo. banc 1981), *State v. Newlon*, 627 S.W.2d 606, 623 (Mo. banc 1982).