**STATE of Missouri, Respondent,**

v.

**Lee Otis JACK, Appellant.**

**No. WD 43535.**

Missouri Court of Appeals, Western District.

June 18, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied Sept. 10, 1991.

David S. Durbin, Appellate Defender, Terri L. Backhus, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and TURNAGE and GAITAN, JJ., and WASSERSTROM, Senior Judge.

NUGENT, Presiding Judge.

Defendant Lee Otis Jack appeals his conviction by a jury of forgery—uttering as genuine. § 570.090.1 R.S.Mo.1986. The testimony showed that defendant tried to cash a check drawn on the account of Greg Drees at the Mercantile Bank. Mr. Drees testified that the check came from his checkbook, which someone had stolen with his car several days earlier. Defendant admitted trying to cash the check but claimed that a man gave him the check as an advance payment for some automobile mechanic work.

The defendant's sole point challenges the trial court's ruling excluding the expert testimony of Dr. Warren Wheelock. The point asserts that Dr. Wheelock's testimony regarding literacy "was relevant to the issue of voluntariness of defendant's statements to police, his ability to understand his waiver of *Miranda*[1] rights and interact with others." Because the point relied on raised only the issue of the relevancy of this testimony we need address only that issue.[2] *State v. Mooney*, 714 S.W.2d 216, 218 (Mo.App.1986).

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The argument portion of the brief also raised issues regarding the relevancy of this testimony in explaining the credibility of defendant's story

On April 26, 1990, defendant moved to suppress the statements he made to the police, asserting that due to defendant's low level of intelligence he could not have knowingly waived his *Miranda* rights. The motion disclosed that Dr. Wheelock had examined the defendant and determined that his low level of intelligence combined with a low reading ability indicated that he lacked the ability to understand the *Miranda* warning or to read the statement that he made to the police.

On April 30, the state moved to preclude Dr. Wheelock's testimony, contending that the prosecution had spoken to Dr. Wheelock and believed that the bulk of his testimony would address defendant's ability to form the appropriate intent about which Dr. Wheelock, as a reading specialist, could not testify as an expert.

The court heard evidence on the motion to suppress. Officer Rodriguez testified that he went to the bank in response to a call from a teller. He found defendant Jack trying to cash the check, arrested him and read the *Miranda* rights to him. When he asked the defendant if he understood the rights, the defendant replied, "Yes."

Detective Russell of the forgery unit testified that he interviewed the defendant, who signed a *Miranda* waiver form after Detective Russell read the warning aloud. He told the detective that he understood those rights and that he could read "a little." The defendant's statement, not completely inconsistent with his defense at trial, related that he received the check from a man "as a loan" and that he neither knew the man nor that someone had stolen the check.

At the suppression hearing the defendant testified that the officer read the *Miranda* warning to him and took him to the city jail.[3] He told Detective Russell that a man wrote the check to him as an advance for some mechanic work, but he did not know the man. He denied referring to the check as a loan and testified that the detective "harrassled" and "bumfoled" him by calling him a liar, which so upset him that he could not think.

Defendant Jack claimed that when Detective Russell finished typing he handed the defendant some papers and asked him if he could read. He testified that he told the detective that he could read a little bit, and the detective told him to read them and sign them. He claims that he was so upset that he could not read all the papers and just signed them to get away from the detective. Initially, he denied that Detective Russell also read the *Miranda* advice and warning to him, but he also stated, "It was in the middle of his typing. He typed some stuff down before he give me that right."

During cross-examination, defendant Jack read aloud the *Miranda* rights. He read:

> Before bringing—being asked any questions I have been told of my rights to remain silent, that anything I say can and will ... be used against me in Court; that I have the right to talk with a lawyer and to have the lawyer with me during questioning.

He said that "the right to remain silent" means that he could not say anything, that, "you wouldn't have to talk without an attorney." He also admitted prior arrests and having heard the *Miranda* advice and warning before.

Dr. Warren Wheelock, a doctor of education and specialist in reading disorders, testified by way of an offer or proof. He had tested the defendant's reading ability, and the tests showed that the defendant had an I.Q. of between sixty-eight and seventy-eight, could read at a third grade level and could comprehend sixth grade materials read to him. Dr. Wheelock performed

---

that he received the check in advance for some mechanic work, and further argued that the trial judge should have recused himself sua sponte because of his bias. Neither the facts in the record nor the law supports defendant's position or provides the basis for plain error.

*State v. Hanson,* 587 S.W.2d 895, 906 (Mo.App. 1979).

3. Specifically, the defendant testified that the officer said, "You have a right to have—remain silent or have a lawyer...."

generally accepted readability tests on the *Miranda* warning and on the statement taken by Detective Russell and placed the readability of the *Miranda* warning at the tenth grade level and the readability of the defendant's statement at the sixth grade level.

We affirm the judgment.

The trial court has the discretion to determine the admissibility of expert testimony and the appellate court will not disturb that decision absent a clear abuse of discretion.

■■■ Discretion means the option that a trial judge has in doing or not doing that which a litigant does not have the absolute right to demand. *Anderson v. Robertson*, 402 S.W.2d 589, 592–93 (Mo.App.1966). Of course, an untenable judicial act that defies reason and works an injustice constitutes abuse of discretion. *State v. Williams*, 643 S.W.2d 3, 4 (Mo.App.1982), *citing State v. Stubenrouch*, 499 S.W.2d 824, 826 (Mo.App.1973). When the trial court's ruling clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable, the appellate court will find an abuse of discretion. *State v. Marks*, 721 S.W.2d 51, 55 (Mo.App.1986), *citing Mathews v. Chrysler Realty Corp.*, 627 S.W.2d 314, 318 (Mo.App.1982). Once the appellate court has found that the trial court had alternative choices that would not yield a result contrary to the law, however, the review ends, and the appellate court will affirm any of those choices. *In re George*, 630 S.W.2d 614, 622 (Mo.App.1982). These principles apply in both civil and criminal cases. *See Marks, supra; Williams, supra; Anderson, supra. Cf. Consolidated School Dist. Number 2 v. King*, 786 S.W.2d 217, 218 (Mo.App.1990).

■■■ Although the courts take into consideration education and intelligence in determining the voluntariness of a defendant's statement, courts consider other matters and determine the voluntariness of a statement based on the totality of the circumstances. *Coney v. Wyrick*, 532 F.2d 94 (8th Cir.1976); *State v. Frazier*, 587 S.W.2d 368, 370 (Mo.App.1979). Many persons of low intelligence have the capacity to waive their rights, and the law does not require that a defendant know and understand all the possible consequences of that waiver. *Colorado v. Spring*, 479 U.S. 564, 574–75, 107 S.Ct. 851, 857–58, 93 L.Ed.2d 954 (1987); *State v. Powell*, 798 S.W.2d 709, 713 (Mo.1990) (en banc).

■■■ The statement that defendant Jack gave to Detective Russell, while not identical to his trial testimony, nevertheless substantially conforms to that sworn testimony: He received the check from a stranger as an advance for work he would do later, hardly a confession. In fact, the trial court granted a motion in limine to prohibit the use of the word "confession" to refer to the defendant's statement. Excluding this testimony did not prejudice the defendant. *State v. Quisenberry*, 639 S.W.2d 579, 586 (Mo.1982) (en banc). The trial court's ruling did not abuse its discretion.

Moreover, the defendant's own reading and explanation of the *Miranda* rights specifically contradicted Dr. Wheelock's testimony that he would not expect the defendant to read or understand the warning. *Cf. State v. Powell, supra.* The record shows that defendant Jack understood the warnings. Therefore, he suffered no prejudice by reason of the exclusion of Dr. Wheelock's testimony.

Finally, we note that, although the defendant now focuses on the claim that this testimony pertained to the voluntariness of his statement, at trial the parties concentrated on whether the testimony could be used to show the defendant's diminished capacity in dealing with the man who defendant said originally wrote the check. In fact, the defense offered the instruction for diminished capacity and did not request the instruction regarding the voluntariness of a statement.

For the foregoing reasons, we affirm the judgment.

All concur.