STATE of Missouri, Respondent,

v.

Steven D. CHANERL, Appellant.

No. WD 42268.

Missouri Court of Appeals,
Western District.

July 17, 1990.

Clifford R. Saulter, Jefferson City, for appellant.

Richard G. Callahan, Pros. Atty., Mark A. Richardson, Asst. Pros. Atty., Jefferson City, for respondent.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

NUGENT, Chief Judge.

The defendant Steven D. Chanerl appeals from the judgment of the trial court imposing a sentence of two months imprisonment and a fine of $250 after his conviction by a jury on a charge of third degree sexual abuse. We affirm the judgment.

Mr. Chanerl contends on appeal that the trial court erred in the following rulings: In overruling his objection to the introduction of statements he made; in overruling his objection to the prosecution's questioning him on inadmissible details regarding his prior convictions; in striking for cause a member of the venire; in refusing to strike for cause a prospective juror who served as a corrections officer; and in refusing to quash the all white venire.

On January 14, 1989, the defendant entered the Rozeier Art Gallery in Jefferson City where he found tour guide Rosalyn Wiley seated at the reception desk. Ms. Wiley had once worked as an intern under Mr. Chanerl's supervision. The defendant approached and greeted her. Ms. Wiley responded, and Mr. Chanerl then asked her to hug him. She refused and he approached her with his arms extended. Ms. Wiley, seated in a corner with the desk in front of her, could not evade the defendant, who continued to speak to her as he approached. He dumped the contents of her book bag onto the floor and told her to kiss and hug him. She continued to refuse, and he began grabbing at her body. He sat on her lap, felt her breasts and her legs and, according to Ms. Wiley, eventually pulled her to the floor and grabbed her hands. She testified that he became continually more aggressive and told her, "You know you like it."

During this attack, Charles and Catherine Harris and their two children entered the gallery, and Mr. Harris, attempting to find a guide, called out, "Hello!" They then saw Mr. Chanerl from behind, sitting beside Ms. Wiley on the floor. Assuming that they "had interrupted something," they entered the gallery.

Ms. Wiley eventually freed herself and threatened to call for security personnel. Ms. Wiley explained to the Harrises what had happened and took their names. She then reported the attack and the next day the authorities arrested the defendant. The state charged him with third degree sexual abuse.

At trial, an interrogating officer testified that he read a *Miranda* warning to Mr. Chanerl and then asked him whether he understood his rights. The defendant answered that he did not understand. Twice again the officer read the warning, and each time Mr. Chanerl said that he did not understand, and he refused to sign a waiver of his rights.

The officer testified that as he began to leave the interrogation room Mr. Chanerl called him back. The defendant explained that he "wasn't a sexual assaulter" and that he did not find Ms. Wiley sexually appealing but found other tour guides more appealing.

During the voir dire of prospective jurors, the prosecution asked a member of the venire, Mr. Austeel, a corrections officer if as a corrections officer he would favor one side or the other. He answered, "Not in this particular case. If it would be an inmate that were coming up for retrial or something like that, then I might be a little bit hesitant about—." The prosecutor interjected, "Serving on it. Okay." Mr. Austeel continued, saying, "Now this gentleman here, I don't know him. No none whatsoever."

The prosecutor then told Mr. Austeel that the defendant faced only jail, not prison time, and asked if that fact affected him. Mr. Austeel said that it did not. The prosecution then asked if he could fairly and impartially decide the case, and Mr. Austeel said that he could.

The jury convicted the defendant of third degree sexual abuse and the defendant appealed.

In his first point on appeal, Mr. Chanerl contends that the trial court erred in admitting into evidence statements that he made to the interrogating officer after he had repeatedly said that he did not understand the *Miranda* warnings and had refused to sign a waiver of rights.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court reiterated its longstanding holding that, under the Fifth Amendment, an accused in custody has the absolute right to remain silent. *Id.* at 469, 86 S.Ct. at 1625. The Court also held that the police have the absolute duty to inform the accused of his right to an attorney, free of charge if he cannot afford one, before they may question him. *Id.* at 471–72, 86 S.Ct. at 1626–27. After this warning, the interrogation must cease if the accused chooses to remain silent. *Id.* at 474, 86 S.Ct. at 1627. If the police persist in questioning the accused after informing him of those rights, to ensure the admission of the defendant's post-warning statements as evidence against him the prosecution has the heavy burden of proving by a preponderance of the evidence that the defendant made the incriminating statements only after knowingly and intelligently waiving those constitutional rights. *Id.* at 475, 86 S.Ct. at 1628; *Lego v. Twomey,* 404 U.S. 477, 484, 92 S.Ct. 619, 624, 30 L.Ed.2d 618 (1972). *See also State v. Groves,* 646 S.W.2d 82, 84 (Mo. 1983) (en banc).

■ Determining whether an accused has knowingly and intelligently waived his rights under *Miranda* depends upon the facts in each case. *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *State v. Beck,* 687 S.W.2d 155, 159 (Mo.1985) (en banc), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). If an accused initiates a conversation with the police, for example, nothing in the Fifth or Fourteenth Amendments prohibits them from listening to and using those volunteered statements against him. *Edwards, supra,* 451 U.S. at 485, 101 S.Ct. at 1885.

■ That exactly describes the situation before us. The record shows that after Mr. Chanerl said that he did not understand his rights, the interrogating officer began to leave the room. The defendant then called him back and volunteered the statements he now seeks to exclude. The trial court properly admitted the statements into evidence.

■ In his second point on appeal, Mr. Chanerl argues that the trial court erred in allowing the prosecutor to question the defendant on the sentences he received as a result of his prior convictions rather than only on the nature and number of those convictions. The trial court erred in allowing the introduction of the testimony regarding the sentences, but Mr. Chanerl's attorney made no timely objection, therefore, we cannot reverse on that point.

■ We have consistently held that the prosecution may not inquire of a defendant as to the length of sentences imposed upon prior conviction. *State v. Teter,* 724 S.W.2d 538, 540 (Mo.App.1986); *State v. Newman,* 568 S.W.2d 276, 280–81 (Mo.App. 1978). The Eastern District, on the other hand, has held testimony regarding sentences admissible. *See State v. Jackson,* 676 S.W.2d 304, 305 (Mo.App.1984). We choose not to follow that holding, however, because we deem the length of a sentence utterly irrelevant to the reason for the inquiry, namely, proving that the defendant has suffered prior convictions, a matter bearing on his credibility as a witness.

Nevertheless, we cannot reverse on the ground raised in this point because defense counsel made only one objection to the improper questions and did not object again until the prosecution had completed its inquiry. Defense counsel should have objected each time the prosecution asked about the length of a sentence. A similar situation arose in *Teter, supra,* where we also found reversible error but could not reverse because of the defense counsel's inadequate objection.

■ In his third point on appeal, Mr. Chanerl maintains that the trial court erred in striking Mr. Doyle for cause because no basis existed for his disqualification. We have reviewed this point and find Mr. Chanerl's argument without merit.

During voir dire, Mr. Doyle explained that about five years before someone had sexually abused a member of his family for a prolonged period of time. He said that he "wouldn't be able to decide" upon a sentence in a sexual abuse case. Over the

defendant's objection, the trial court sustained the state's motion to strike Mr. Doyle for cause.

Mr. Chanerl contended that Mr. Doyle had said that he thought he could decide the case fairly and impartially. The prosecution responded that in filling out the questionnaires given members of the venire Mr. Doyle had written that someone had raped his wife. The prosecution further explained that Mr. Doyle "seemed to labor tremendously under an emotional difficulty with a sexual case," and even the defendant's counsel said that "he may have some emotional problems with a sex case...."

■ Defendant's argument presents a simple question: Does the state have the right to impartial jurors on the trial of a criminal case? We have no difficulty holding that, just as the defendant has the right to an impartial jury, *State v. Wheat*, 775 S.W.2d 155, 158 (Mo.1989) (en banc), so does the state. *State v. Woods*, 662 S.W.2d 527, 530 (Mo.App.1983); *State v. Grady*, 649 S.W.2d 240, 244 (Mo.App.1983). The trial court did not abuse its discretion in sustaining the prosecution's challenge of Mr. Doyle for cause.

We have more difficulty with defendant's Point IV on appeal in which the defendant contends that the trial court erred in refusing to strike for cause a member of the venire who became the jury foreman, Eugene O. Austeel, an officer of the Missouri department of corrections for nine and one half years.

■ Our legal system entitles a defendant, before the exercise of any peremptory strikes, to a full panel of jurors, qualified for service because of their abilities to decide the case before them fairly and objectively. A trial court's denial of a legitimate request to strike for cause a member of the venire constitutes reversible error. *State v. Wheat, supra.*

In *State v. Leipus*, 675 S.W.2d 896 (Mo. App.1984), the Eastern District of this court found reversible error in a trial court's refusal to strike for cause another corrections officer. *Id.* at 899–900. There,

during the voir dire, the officer said that "he might find it very difficult to listen to the evidence and to judge the case on the facts." The court then asked him if his work experience would prejudice his judgment and the officer answered, "It's a possibility." *Id.* at 898. The trial court inquired no further on that subject.

On appeal, the court distinguished the standard of review required in the situation before it from the usual standard under which appellate courts will reverse a decision on a motion to strike only upon proof that it constituted an abuse of the trial court's discretion. *Id.* The court held that a trial court's failure to conduct an independent examination of a prospective juror who expresses doubt that he could fairly decide a case demands a more searching appellate review of the decision. *Id.*

■ Here, unlike the trial court in *Leipus*, the court did not inquire at all about Mr. Austeel's remark that he might have difficulty making an impartial decision in a case involving a prison inmate. The critical question on this point then becomes whether Mr. Austeel's answers triggered the trial judge's duty to make further inquiry of him regarding his meaning. Quite simply, we believe that Mr. Austeel plainly meant only that he would have some hesitation about his ability to render an impartial judgment in the trial of an inmate but would not feel so in defendant Chanerl's case. That unambiguous meaning did not trigger the duty of the trial judge to conduct an additional independent examination of Mr. Austeel. Therefore, the trial court did not abuse its discretion.

■ In his fifth point on appeal, Mr. Chanerl argues that the trial court erred in refusing to quash the entire jury panel because it consisted only of white persons, thus depriving him, an African–American, of his right to have a jury representing a fair cross-section of the community. Since he has not argued this point, we need not address it. *See* Rule 84.04(e). We do, however, and reject the argument that a defendant has a right to a jury containing members of diverse racial groups.

▆ A state's jury selection system that excludes potential jurors because of race violates a defendant's Fourteenth Amendment right to equal protection of the law. In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Court reiterated its longstanding holding that to ensure a fair trial the Sixth Amendment demands that petit juries come from venires selected from a fair cross-section of the community. *Id.* at 528, 95 S.Ct. at 696. There in reversing a criminal conviction the Court held that Louisiana's jury selection process systematically and thus impermissibly excluded women from venires. *Id.* at 531, 95 S.Ct. at 698. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Court reversed another criminal conviction on the same ground. It applied *Taylor*'s three-pronged test for establishing the existence of a prima facie violation of the Sixth Amendment's fair cross-section requirement: that the excluded group constituted a "distinctive group" in society; that the venire in question did not contain a reasonable and fair number of members of that group; and the state has systematically excluded members of that group from venires.

▆ Here, Mr. Chanerl has produced no evidence of a systematic exclusion of African–Americans from Cole County venires. Thus, since he has failed to prove one prong of the *Taylor* test, his argument fails. Moreover, prevailing decisions hold only that the jury selection process must ensure selection of petit juries from a fair cross-section of the community, not that petit juries themselves constitute fair cross-sections.

For the foregoing reasons, we affirm the judgment.

All concur.