22 S.W.3d 183 (2000)
STATE of Missouri, Respondent,
v.
Ernest Lee JOHNSON, Appellant.
No. SC 81596.
Supreme Court of Missouri, En Banc.
June 13, 2000.
Rehearing Denied August 1, 2000.
*185 William J. Swift, Asst. Public Defender, Columbia, for Appellant.
Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for Respondent.
DUANE BENTON, Judge.
Defendant Ernest Lee Johnson killed three employees of a convenience store by beating them to death with a hammer. A search of his home led to the discovery of bloody clothes, money and receipts from the convenience store. See State v. Johnson, 968 S.W.2d 686, 689-90 (Mo. banc).
Defendant was convicted of the murders and sentenced to death. This Court affirmed the convictions, but vacated the death sentences, remanding for a new penalty phase. Id. at 702. The new jury also returned three death sentences. Defendant appeals. Mo. Const., art. V, sec. 3. Affirmed.

I.
Defendant claims the circuit court erred in striking for cause F.R., a venireperson who stated he could vote to impose the death penalty, but could not sign his name on the verdict form as foreperson.
The following colloquy occurred:
PROSECUTOR: What about you? Can you consider both punishment options? VENIREPERSON F.R.: I could decide both.
Q: Life without parole?
A: Yes.
Q: And can you consider the death penalty?
A: Yes.
Q: You kind of, on that one, now, you kind of hitched up on me a little bit. That's theSee, only you know what's going on with this.

*186 A: That would have to be a real tough decision, in any mind.
Q: Nobody says this is going to be easy.
A: Right.
Q: Nobody says this is going to be easy. But not knowing any more than what you've been told as you sit there today, do you think that you could consider that punishment, the death penalty, in this particular case? Because this is a real person sitting here. It's not on T.V.
A: I could consider it, but it would have to be wellHow do we say? presented before I could decide.
Q: Well, yeah. I guessI can't go any further into the facts.
A: Right.
Q: You've obviously done some thinking about the death penalty?
A: A little.
Q: Could you ever really envision yourself as an individual going, yes, death?
A: Yes, I could.
Q: Okay.
A: I've done that before.
Q: Okay. You've done what?
A: I mean, I've envisioned myself.
Q: Okay. I was going to say, if you've been through this before, brother.
(Laughter.)
Q: Okay. But, I mean, you've done some thinking about this, then?
A: Uh-huh.
Q: Okay. If you were selected as a juror in this case and then your fellow jurors decided that you would be their foreman, under the law, the foreman, if the final decision is death, signs that verdict. That would be you. Could you do that, knowing that there's a certain
DEFENSE COUNSEL: I'm going to object. Asking for a commitment.
COURT: Objection will be overruled.
PROSECUTOR:knowing that there's a certain finality to your decision?
VENIREMAN F.R.: I can't say right now. I have no idea. I don't thinkI don't know.
Q: You don't think you could do that, do you?
A: I don't think I could put my name behind, my single name behind one person's death.
Q: That's what it is. It's your name, as foreperson, on that verdict form. And it's okay
A: I don't think I could do that. I don't think I could put my name there.
Q: That's fine. It's tough, isn't it?
A: Yeah.
Q: Tough talking about this?
A: Yeah.
During later questioning by defense counsel, F.R. responded that he could basically go through the process (including following the instructions and considering the aggravating circumstances), but reiterated, "I don't think I could put my single name to one person's death."
The State challenged F.R. for cause. Defendant countered that F.R. could "envision himself giving the death penalty, he just will have difficulty signing the form." The trial judge removed F.R. for cause.
A trial court's ruling on a challenge for cause will not be reversed unless clearly against the evidence and a clear abuse of discretion. State v. Middleton, 995 S.W.2d 443, 460 (Mo. banc), cert, denied, ___U.S. ___, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999).
A juror's equivocation about his ability to follow the law in a capital case together with an unequivocal statement that he could not sign a verdict of death can provide a basis for the trial court to exclude the venireperson from the jury. State v. Clayton, 995 S.W.2d 468, 476 (Mo. banc), cert. denied, ___U.S. ___, 120 S.Ct. 543, 145 L.Ed.2d 421 (1999); State v. Rousan, 961 S.W.2d 831, 840 (Mo. banc), cert. denied, 524 U.S. 961, 118 S.Ct. 2387 *187 141 L.Ed.2d 753 (1998); see also Johnson, at 694.
Defendant relies on two federal appellate cases for the proposition that jurors should not be excluded for stating that they could not serve as a foreperson: Alderman v. Austin, 663 F.2d 558, 562-64 (5th Cir.1981), aff'd on this point, 695 F.2d 124, 126 (5th Cir. en banc 1983); and O'Bryan v. Estelle, 714 F.2d 365 (5th Cir. 1983), cert. denied, 465 U.S. 1013,104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Both cases base their decisions on the then-controlling Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). However, in Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the United States Supreme Court clarified Witherspoon, creating a new standard for evaluating venire strikes. State v. Debler, 856 S.W.2d 641, 645-46 (Mo. banc 1993). The relevant question is whether a venireperson's beliefs preclude following the court's instructions so as to "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright, at 424, 105 S.Ct. 844.
In this case, F.R. indicated that he could not sign the death verdict form and hesitated about his ability to follow the instructions. This constituted equivocating about his ability to serve, which would substantially impair the jury process. See Clayton, at 476; Rousan, at 840. The trial judge did not abuse his discretion in sustaining the strike of F.R.

II.
Defendant argues that the trial court wrongly struck for cause F.A., a venireperson who stated he would require more than proof beyond a reasonable doubt, before considering the death penalty.
F.A. initially said he could consider both life imprisonment and death.
PROSECUTOR: Okay. So you think you could consider both of those punishment options and listen to the evidence and make your decision?
VENIREMAN: Yes, I believe I could.
Q: All right. You seem like you're kind of hesitant on thepotentially on the latter of the two, and that's
A: Well, I haven't been faced with it before.
Q: I understand.
A: So, you know, yeah, I believe, ifif, you know, evidence was overwhelming, I'm sure.
Q: Well, overwhelming evidence. Would youwould you be inclined, because of your views on the death penalty, to hold the State to a higher burden than proving the aggravating circumstances beyond a reasonable doubt?
A: Truthfully, yeah, probably.
Q: You would. So if the court instructed you that the State's burden of proof was proving the aggravating circumstances, the things that we'll submit make this murder, you know, worse, like I said, the State would instruct you that the burden of proof is beyond a reasonable doubt, okay, would you have trouble following that particular instruction? In other words, would you require the State to prove those beyond all doubt, for instance?
A: Probably so.
Q: Okay. So because of your views on the death penalty, is it a fair statement to say that your ability to follow the Courtand I'm not trying to get on you nowwould you say that your ability to follow the Court's instructions would be substantially impaired?
A: I could follow the instructions.
Q: Well, okay. We've got to go back.
A minute ago you said, you know, you thought you wouldn't be able to hold the State to that burden and you'd require the State to prove a higher degree of proof. See, that's what I'm saying.
A: It's kind of my personal feelings, Yes.
Q: Huh?
*188 A: That's kind of my personal feeling, yes.
Q: What I'm saying, the court is going to instruct you what the burden of proof is, and it's beyond a reasonable doubt.
A: Okay.
Q: You would have difficulty following that instruction; is that true?
A: Yes.
Q: Okay. Because of your views on the death penalty?
A: Yes.
Before questioning individual members of the venire, defense counsel explained the process of deciding between the death penalty or life imprisonment. Defense counsel then asked F.A. the following questions:
DEFENSE COUNSEL: [F.A.], finally. You heard the process?
VENIREPERSON: Right.
Q: And you understand it?
A: Yes, I do.
Q: And you could follow it?
A: Yes.
Q: Okay. All four steps?
A: Yes.
Q: Okay. And also, the knowledge of the type of killings that have been alleged in a murder first degree, you could still consider both options, keep both options open?
A: Yes.
Q: Life without parole and death?
A: Yes.
Q: Okay. Have you preformed opinions or beliefs concerning the death penalty?
A: No.
Q: For real?
A: Well, I mean, I do, but it would depend on the case and what, what it all involved.
Q: Okay. But as you sit there?
A: I believe in the death penalty, if there wasif the reason was there forI believe that if the case warrants it. I don't know. I guess it would have to convince me personally.
Q: Would you have to be, as you sit there now, would you have to be convinced that a case of murder in the first degree warranted death or would you have to be convinced that it didn't? Do you understand what I'm saying?
A: Not really. I'd probably have to be convinced that it did.
Q: That it did?
A: Yes.
Q: Okay.
A: Well, definitely I'd have to be convinced that it did warrant the death penalty.
Q: Okay. So as you sit there now, you know, you're not leaning one way or the other?
A: No.
Q: Okay. You're not a Yankees fan or a Mets fan; you don't care about either one?
A: (Shaking head).
Q: Okay.
The State challenged F.A. for cause, and defense counsel objected. The trial judge sustained the strike, noting that F.A. had not been rehabilitated.
The qualifications of a prospective juror are not determined conclusively by a single response, but by the entire examination. Middleton, at 460. The trial court can better evaluate a venireperson's commitment to follow the law and has broad discretion to determine the qualification of prospective jurors. Id. Under Wainwright, the trial judge evaluates the venire's responses and determines whether their views would prevent or substantially impair their performance as jurors (including the ability to follow instructions on the burden of proof). State v. Richardson, 923 S.W.2d 301, 309 (Mo. banc), cert. denied, 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996).
In this case, F.A. stated he would hold the State to a higher burden (than beyond *189 a reasonable doubt) on aggravating circumstances. He was not rehabilitated. The trial judge did not abuse his discretion in determining that F.A. was not qualified.

III.
At the original trial, defendant moved to preclude the State from seeking the death penalty (or alternatively for an evidentiary hearing), because the State's method of execution violates his right to be free from cruel and unusual punishment under the United States Constitution, amendments VIII and XIV, and the Missouri Constitution, article 1, sections 10 and 21. The judge overruled the motion. Defendant, however, did not raise this issue in his original appeal.
Before the new penalty phase, defendant orally renewed his original motion. The judge, adhering to his prior ruling, overruled it.
The State claims defendant's point is barred by the law of the case doctrine, because the trial judge's original ruling was not appealed.
The doctrine of law of the case governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case. State v. Phillips, 324 S.W.2d 693, 694 (Mo.1959); State v. Allen, 363 Mo. 467, 251 S.W.2d 659, 660 (1952). A previous holding is the law of the case, precluding re-litigation of issues on remand and subsequent appeal. State v. Graham, 13 S.W.3d 290, 293 (Mo. banc 2000). The decision of a court is the law of the case for all points presented and decided, as well as all matters that arose before the first adjudication and might have been raised but were not. Id.; State v.. Meyer, 293 Mo. 108, 238 S.W. 457, 458 (1922). According to the law of the case doctrine, failure to raise points in a prior appeal means that a court later hearing the case need not consider them. United States v. Kress, 58 F.3d 370, 373 (8th Cir.1995). Appellate courts have discretion to consider an issue where there is a mistake, a manifest injustice, or an intervening change of law. Graham, at 293; Phillips, at 694.
Here, by the law of the case, defendant's claim is controlled by the trial judge's original ruling. No mistake, manifest injustice, or intervening change of law has occurred. Defendant's direct-appeal challenge to the State's method of execution has been ruled against him.

IV.
Defendant contends that because he was arrested without a warrant, the trial court should not have permitted the jury in the second penalty phase to hear about his statements to the police and the evidence subsequently seized.
During the investigation, police learned that defendant regularly frequented the convenience store where the murders occurred. Officers went to his house seeking information about the homicides. Defendant initially refused to speak with them. However, he voluntarily accompanied them to the police station; he was not under arrest or restraint. At the station, defendant made statements that conflicted with evidence recovered. Police then read defendant his Miranda rights. Defendant said he understood his rights and continued talking. After an evidentiary hearing at the first trial, the trial court overruled defendant's motion to suppress.
Defendant claims he was coerced into accompanying the police because he and three other people in the house were threatened with arrest if he did not cooperate. Defendant alleges that while in the basement smoking crack, he heard officers make this threat. A police officer testified that no such threats were made.
The State contends that this point was decided at the original trial, and the law of the case doctrine governs the issue here. This evidence was introduced in the original trial to prove defendant's guilt, and considered by the first jury during the *190 penalty phase. It was re-introduced in the second penalty phase to the new jury. However, defendant did not raise this issue on his original direct appeal. The evidence in both trials is virtually identical. Cf. Meyer, at 458.
Defendant's failure to raise the issue in his first appeal means that, by the law of the case, a court later hearing the case need not consider it. Graham, at 293; see also Kress, at 373. No mistake, manifest injustice, or intervening change of law has occurred. Defendant's attack on the jury's consideration of his statements and other evidence is denied.

V.
Defendant claims that the trial court should have limited the victim impact evidence. During testimony by family members, defendant did not object, either directly or by renewing his motion in limine. Defendant concedes that review is for plain error. Rule 30.20. To prevail, defendant must show a manifest injustice or miscarriage of justice if the error is not corrected. State v. Tokar, 918 S.W.2d 753, 769-70 (Mo. banc), cert. denied, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).
Victim impact evidence is admissible, within constitutional limits. State v. Roberts, 948 S.W.2d 577, 604 (Mo. banc 1997), cert, denied, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). The State may show that the victims were individuals whose deaths are unique losses to society and to their families. Id.
Defendant asserts that the prosecutor implied that the victims' lives were worth more than his life. In fact, no such comparison was made. The State's evidence showed that the victims were hard-working people who cared for their families. During rebuttal argument, the prosecutor summarized the witnesses' testimony. The trial court did not err in allowing the evidence or argument.

VI.
Defendant contends that the trial court should have granted a mistrial due to improper rebuttal argument by the prosecutor during closing argument:
PROSECUTOR: Law and order demands that this case get the response of the death penalty. Consider because of the way he killed these victims, what he did, that if there's anybody in this courtroom who believes in the death penalty
DEFENSE COUNSEL: Your Honor, I'm going to object. May we approach?
THE COURT: You may.
* * *
DEFENSE COUNSEL: Your Honor, I'm going to object. This is totally improper argument and I'm going to request a mistrial at this point.
THE COURT: Well
PROSECUTOR: It's a rhetorical question, Judge, to consider whether
THE COURT: I'll sustain the objection as to anybody in this courtroom, and the request for a mistrial will be denied.
DEFENSE COUNSEL: I'd like to federalize the objection, request
THE COURT: I'll admonish the jury to disregard that if you want me to.
DEFENSE COUNSEL: I do.
THE COURT: Okay.
(PROCEEDINGS RETURNED TO OPEN COURT)
THE COURT: Members of the jury, you're admonished to disregard the last argument.
Defendant claims the prosecutor's argument was not based on the evidence, but was only his personal opinion and belief. Prosecutors must argue facts in the record and may not inject their personal opinions or beliefs into argument. State v. Storey, 901 S.W.2d 886, 901 (Mo. banc 1995).
*191 A trial judge may address an error in argument by giving a curative instruction. State v. Neff, 978 S.W.2d 341, 346 (Mo. banc 1998). Mistrial is a drastic remedy reserved for extraordinary circumstances. Roberts, at 605. This decision is in the discretion of the trial court. Id.
Defendant argues that the prosecutor would have said (or did imply) that "if anybody in the courtroom believes in the death penaltyit's Ernest Johnson." This is speculation because the judge sustained the objection and instructed the jury to disregard the argument. The judge did not abuse his discretion in refusing a mistrial.

VII.
Defendant argues that in the jury instruction, the trial court should have specifically listed statutory and non-statutory mitigating circumstances, detailing defendant's mental and emotional state, drug addiction, childhood, and lesser punishment for co-defendants. Defendant did not preserve this claim in his motion for a new trial. Review is for plain error. Rule 30.20.
The instructions given by the court listed statutory mitigating circumstances, patterned after MAI-CR 3d 313.44A. They also included the phrase, "You shall also consider any other facts or circumstances which you find from the evidence in mitigation of punishment." The jury heard testimony about the non-statutory circumstances presented by defendant. A defendant is not entitled to a mitigating circumstance instruction that specifically lists non-statutory mitigating circumstances. State v. Copeland, 928 S.W.2d 828, 853-54 (Mo. banc 1996), cert. denied, 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); Buchanan v. Angelone, 522 U.S. 269, 118 S.Ct. 757, 761, 139 L.Ed.2d 702 (1998). The trial court did not plainly err in refusing defendant's proffered instructions.

VIII.
Defendant claims the trial court should have struck all six aggravating circumstances. This claim was not preserved in the motion for new trial and is reviewed for plain error. Rule 30.20.
For each murder, the aggravating circumstances were: (1) each murder was committed while murdering another victim, (2) each murder was committed while murdering yet another victim, (3) each victim was murdered for the purpose of receiving money or other things of monetary value, (4) each murder involved depravity of mind and was outrageously and wantonly vile, horrible, and inhuman in that excessive and repeated acts of violence occurred, and the killing was unreasonably brutal, (5) each murder was committed to prevent defendant's arrest, and (6) each murder was committed while defendant was engaged in a robbery.
Defendant contends that each of the six aggravators submitted for each victim fails to narrow the class of persons eligible for the death penalty. An aggravating circumstance must meet two requirements: (1) it may not apply to every defendant convicted of murder and (2) it may not be unconstitutionally vague. Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).
Defendant first challenges the depravity-of-mind aggravator (number 4).
This instruction is not unconstitutionally vague. State v. Ervin, 979 S.W.2d 149, 164-66 (Mo. banc 1998), cert. denied, 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999).
Defendant next attacks, as duplicative, the pecuniary gain and robbery aggravators (numbers 3 and 6). This instruction is constitutional. State v. Griffin, 756 S.W.2d 475, 489 (Mo. banc 1988).
Defendant alleges that the first two aggravators fail to narrow the class of persons eligible for the death penalty, because the "same event" counts as two aggravators.
*192 This contention is again rejected. See State v. Powell, 798 S.W.2d 709, 715 (Mo. banc 1990).
Defendant argues that the fifth aggravator, murdering to prevent his lawful arrest, could apply to every murder case, and is thus unconstitutional. In this case, there was evidence that defendant was a frequent customer of the convenience store and was known to the employees. The jury could find, beyond a reasonable doubt, that defendant killed the three employees to avoid identification and arrest. See State v. Hall, 982 S.W.2d 675, 685 (Mo. banc 1998).
Defendant finally claims that the trial court plainly erred when it instructed the jury to "weigh" aggravators against mitigators when some of the aggravators were invalid. In this case, the aggravators were valid, and the trial court did not plainly err in submitting the aggravating circumstances in accordance with the instructions in MAI-CR.

IX.
Defendant objects to the definition of "reasonable doubt" in MAI-CR3d 313.30A. This Court again rejects this argument. State v. Harris, 870 S.W.2d 798, 811 (Mo. banc), cert. denied, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

X.
Defendant asks this Court to vacate the death sentences under this Court's independent proportionality review. According to defendant, the death sentences are excessive and disproportionate because his parents abused him mentally, physically, and sexually; he was raised in extreme poverty; and he suffers from brain damage that makes him borderline mentally retarded.
This Court determines whether: (1) the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) the evidence supports the finding of a statutory aggravating circumstance; and (3) the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering the crime, strength of the evidence, and the defendant. Section 565.035.3(1)(3).[1]
After independent review of the record, this Court finds that the death sentences in this case were not imposed under the influence of passion, prejudice, or any other arbitrary factor.
The jury found the following statutory aggravating circumstances: (1) each murder was committed while murdering another victim, 565.032.2(2); (2) each murder was committed while murdering yet another victim, 565.032.2(2); (3) each victim was murdered for the purpose of receiving money or other things of monetary value, 565.032.2(4); (4) each murder involved depravity of mind and was outrageously and wantonly vile, horrible, and inhuman in that excessive and repeated acts of violence occurred, and the killing was unreasonably brutal, 565.032.2(7); (5) each murder was committed to prevent defendant's arrest, 565.032.2(10); and (6) each murder was committed while defendant was engaged in a robbery, 565.032.2(11).
The evidence supported, beyond a reasonable doubt, each aggravating circumstance. See State v. Johnson, 968 S.W.2d 686, 689-90 (Mo. banc).
Nor are the death sentences excessive or disproportionate to the penalty imposed in similar cases, considering the crime, strength of the evidence, and the defendant. This Court has upheld death sentences where the defendant murdered multiple victims either for pecuniary gain, or to commit a robbery. State v. Wolfe, 13 S.W.3d 248 (Mo. banc 2000); State v. Griffin, 756 S.W.2d 475 (Mo. banc 1988), cert. denied, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); State v. Murray, 744 S.W.2d 762 (Mo. banc), cert. denied, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 *193 (1988); State v. Schneider, 736 S.W.2d 392 (Mo. banc 1987), cert. denied, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988).
This Court has approved the death penalty for defendants who murdered more than one person. State v. Wolfe, 13 S.W.3d 248 (Mo. banc 2000); State v. Johnson, 968 S.W.2d 123 (Mo. banc), cert. denied, 525 U.S. 935, 119 S.Ct. 348, 142 L.Ed.2d 287 (1998); State v. Clemons, 946 S.W.2d 206 (Mo. banc), cert. denied, 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); State v. Ramsey, 864 S.W.2d 320 (Mo. banc 1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); State v. Mease, 842 S.W.2d 98 (Mo. banc 1992), cert. denied, 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993); State v. Hunter, 840 S.W.2d 850 (Mo. banc 1992), cert. denied, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993); State v. Ervin, 835 S.W.2d 905 (Mo. banc 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); State v. Powell, 798 S.W.2d 709 (Mo. banc 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); State v. Reese, 795 S.W.2d 69 (Mo. banc 1990), cert. denied, 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991); State v. Sloan, 756 S.W.2d 503 (Mo. banc 1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989); State v. Young, 701 S.W.2d 429 (Mo. banc 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986).
When a murder involves acts that show depravity of mind, this Court has upheld a sentence of death. State v. Kinder, 942 S.W.2d 313 (Mo. banc 1996), cert. denied, 522 U.S. 854, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997); State v. McMillin, 783 S.W.2d 82 (Mo. banc), cert. denied, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990); State v. Sidebottom, 753 S.W.2d 915 (Mo. banc), cert. denied, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988); State v. Walls, 744 S.W.2d 791 (Mo. banc), cert. denied, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); State v. Roberts, 709 S.W.2d 857 (Mo. banc), cert. denied, 526 U.S. 1013, 119 S.Ct. 1160, 143 L.Ed.2d 225 (1999).
Defendant emphasizes that he suffers from borderline retardation (below average intelligence), reflecting Fetal Alcohol Effect and a head injury. The jury heard expert evidencefrom both defendant and the Stateincluding the flat statement of defendant's expert that defendant "is not mentally retarded." The jury weighed the expert testimony, the facts of this case, and evidence of defendant's long criminal history. In fact, this Court has upheld the death penalty in cases where defendant presented evidence of a low I.Q. and mental retardation. See State v. Richardson, 923 S.W.2d 301, 325 (Mo. banc), cert. denied, 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996).; State v. Powell, 798 S.W.2d 709, 713-14 (Mo. banc 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); State v. Leisure, 749 S.W.2d 366, 382 (Mo. banc); State v. Gilmore, 681 S.W.2d 934, 940 (Mo. banc 1984); State v. Shaw, 636 S.W.2d 667, 672-73 (Mo. banc), cert. denied, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982).
As an alternative, defendant argues that this Court fails to engage in meaningful proportionality review because it refuses to consider all similar cases and does not maintain a complete database of cases, resulting in an arbitrary imposition of the death penalty. These claims are again rejected. State v. Winfield, 5 S.W.3d 505 (Mo. banc 1999); State v. Johnson, 968 S.W.2d 123 (Mo. banc), cert. denied, 525 U.S. 935, 119 S.Ct. 348, 142 L.Ed.2d 287 (1998); State v. Barnett, 980 S.W.2d 297 (Mo. banc 1998), cert. denied, 525 U.S. 1161, 119 S.Ct. 1074, 143 L.Ed.2d 77 (1999); State v. Jones, 979 S.W.2d 171 (Mo. banc 1998), cert. denied, 525 U.S. 1112, 119 S.Ct. 886, 142 L.Ed.2d 785 (1999); and State v. Basile, 942 S.W.2d 342 (Mo. banc), cert. denied, 522 U.S. 883, 118 S.Ct. 213, 139 L.Ed.2d 148 (1997).

*194 XI.
The judgment is affirmed.
All concur.
NOTES
[1] All statutory references are to RSMo 1994.