STATE of Missouri, Respondent,

v.

Carlos ROBERTS, Appellant.

No. ED 98502.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 3, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Jan.
27, 2014.

**670**

Lisa M. Stroup, St. Louis, MO, for appellant.

Chris Koster, Jennifer A. Rodewald, Jefferson City, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Judge.

Carlos Roberts (Defendant) appeals from the judgment of the trial court after a jury convicted him of second-degree murder, armed criminal action, and unlawful use of a weapon. Finding no error, we affirm.

### Background

Defendant and the victim, V.T. (Victim), had a common law marriage and raised six children together. Defendant has a low IQ and a history of substance abuse. In early 2008, Victim ended the relationship and moved out of their home and into their adult daughter's apartment. Defendant followed, moving himself in with Victim and their daughter, so Victim left. Defendant leveled numerous threats toward Victim after their separation. On March 16, 2008, while the daughter was out, her apartment caught fire while her children were there in Defendant's care. Her son

died in the fire, and her daughter was taken to St. Louis Children's Hospital. The family gathered at the hospital the next day (March 17). At some point that day, a witness heard Defendant demand that Victim return home with him; Victim replied that she wanted to stay at the hospital with her daughter and granddaughter. That evening, Defendant and Victim exited the building to smoke. Defendant drew a knife and began stabbing her about the head, neck, and chest. He also cut his own wrists and throat. Security officers intervened. Defendant pointed his knife at them until one drew his firearm. Police officers responded to the scene and arrested Defendant, who admitted to drinking alcohol and smoking crack that day. Defendant said that he didn't remember what happened but later claimed that another man attacked them. Victim did not survive. The State charged Defendant with first-degree murder, armed criminal action, and unlawful use of a weapon.

Before trial, Defendant moved for a competency hearing under § 552.020.7 RSMo. After hearing three expert witnesses (whose testimony is summarized in point I), a six-member advisory jury unanimously found Defendant competent to stand trial, and the trial court adopted their determination. During *voir dire*, venireperson Jacqueline Bloomfield expressed concern about serving on the jury because her elderly mother lived with her and needed full-time care. She also disclosed previous experiences (described in point III) that prompted defense counsel to move to strike her for cause. Ultimately, however, Ms. Bloomfield served on the jury. At trial, Defendant presented the theory that he was not guilty by reason of mental disease or defect excluding responsibility. After hearing testimony from three experts (whose testimony is summarized in point II), the jury found Defendant guilty of second-degree murder, armed criminal action, and unlawful use of a weapon. The trial court sentenced Defendant, as a prior offender, to two concurrent life sentences plus four years.

Defendant asserts three points on appeal: (1) the evidence was insufficient to find that Defendant was competent to stand trial; (2) substantial evidence established that Defendant was not responsible for his conduct due to mental incapacity; and (3) Ms. Bloomfield's presence on the jury deprived Defendant of a fair trial. Additional facts are provided below as relevant to each point on appeal.

## Discussion

### I. Competency

■ First, Defendant contends that the evidence presented in his pre-trial competency hearing was insufficient to support the court's determination that Defendant was competent to stand trial. "The trial court's determination of competency is one of fact and must stand unless there is no substantial evidence to support it." *State v. Anderson*, 79 S.W.3d 420, 433 (Mo.2002). "In assessing sufficiency of evidence, this Court does not independently weigh the evidence but accepts as true all evidence and reasonable inferences that tend to support the trial court's finding." *Id.*

■ "A defendant is competent when he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id.* at 432. As Defendant raised the issue, he bore the burden of proving his incompetence by a preponderance of the evidence. § 522.020.8. To meet that burden, Defendant presented two experts.

■ Dr. Fucetola, a neuropsychologist, interviewed Defendant and his siblings, reviewed his school and medical records, and administered multiple tests of his intellectual competency. Fucetola concluded that Defendant had an IQ of 66, indicating mild mental retardation, and therefore lacked sufficient reasoning skills to confer with his attorney and assist in his own defense.

Dr. Bruce, a psychologist specializing in trauma recovery, interviewed Defendant, reviewed documents (police reports, a previous psychological evaluation, medical records), and administered several tests assessing his mental health and designed to diagnose psychological disorders. Bruce concluded that Defendant suffered from acute stress disorder at the time of the crime (due to the fire and the resulting loss of his grandson and injury to his granddaughter) and had symptoms of dissociative amnesia, inhibiting his complete recollection of the attack. Bruce opined that Defendant was incompetent to assist in his own defense due to his mental impairment and memory lapse.

The State presented one expert, Dr. Scott, a certified forensic examiner. Scott also interviewed Defendant and reviewed previous tests and other documents (school, medical, and criminal records). Scott agreed with the defense experts' diagnoses of mild mental retardation and acute stress disorder but disagreed as to dissociative amnesia. Scott did not readminister the standardized tests used by Fucetola and Bruce but relied only on the documents provided to him along with his own detailed interview, which, among other topics, explored Defendant's understanding of the charges against him, the role and function of court personnel, Defendant's legal options, and courtroom behavior. Based on that interview, Scott concluded that, despite Defendant's cognitive deficiencies, he understood the proceedings, could assist in his defense, and thus was competent to stand trial.

■ On appeal, Defendant submits, essentially, that the trial court believed the wrong expert. Defendant's argument on this point consists of innumerable references to the transcript of defense expert testimony but no Missouri precedent prescribing reversal on similar facts. Simply put, Defendant attempts to re-litigate the record and solicits this court to independently weigh the evidence in contravention of the appellate standard of review. "A mere disagreement among experts does not necessarily indicate error on the part of the trial court. On the contrary, it is the duty of the trial court to determine which evidence is more credible and persuasive." *Anderson,* at 433.

In *Anderson* as in this case, there were two defense experts and one expert for the State. There, the trial court found the defendant competent, and the Supreme Court of Missouri affirmed, holding that the State's lone expert's testimony was adequate substantial evidence to support the court's finding that the defendant was competent to stand trial. Here, the trial court had the additional benefit of a six-person advisory jury to assist in its determination. That process enhances confidence in the decision, and our standard of review mandates deference to the trial court's finding. The testimony of the State's expert, Dr. Scott, constituted adequate substantial evidence to support the court's finding that Defendant was not incompetent to stand trial. Point denied.

## II. *Requisite Mental State*

■ For his second point, Defendant asserts that the trial court erred in denying his motion for acquittal because the evidence was insufficient to establish that he possessed the requisite mental state to commit the crime. He insists that other

evidence in the record suggests that he wasn't responsible for his actions due to mental retardation and acute stress disorder. Again, our standard of review demands that we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding any evidence and inferences to the contrary. *State v. Frazier*, 404 S.W.3d 407, 413–14 (Mo.App. W.D.2013). "The credibility and weight of testimony are for the fact-finder to determine." *Id.* "The fact-finder may believe all, some, or none of the testimony of a witness." *Id.* We do not act as a "super juror" with veto powers but instead give great deference to the trier of fact. *Id.*

█ Section 552.030.1 provides that a person is not responsible for criminal conduct if, at the time of that conduct, he was incapable of knowing and appreciating its nature, quality, or wrongfulness due to mental disease or defect. The statute imposes a legal presumption of sanity that endures throughout the proceedings, and the burden to overcome that presumption by a preponderance of the evidence rests with the defendant:

> All persons are presumed to be free of mental disease or defect excluding responsibility for their conduct.... The issue of whether any person had a mental disease or defect excluding responsibility for such person's conduct is one for the trier of fact to decide upon the introduction of substantial evidence of lack of such responsibility.... Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take to the trier of fact.

§ 552.030.6. Thus, even when a defendant presents substantial evidence of mental illness, the trier of fact is still free to accept or reject that evidence, and the statutory presumption remains. *State v. Moore*, 264 S.W.3d 657, 662 (Mo.App. E.D.2008).

█ Defendant's evidence consisted of expert testimony by Drs. Fucetola and Bruce. As stated above, Fucetola diagnosed Defendant with mild mental retardation. However, Fucetola conceded that this condition didn't preclude an understanding of right and wrong, and he didn't evaluate Defendant's ability to appreciate the wrongfulness of his conduct at the time of the crime. Also mentioned above, Bruce testified that Defendant suffered from acute stress disorder at the time of the crime as a result of the apartment fire and its consequences for his grandchildren. Bruce further opined that Defendant experienced dissociative amnesia such that he was incapable of knowing what he was doing or that it was wrong. Bruce conceded that Defendant used cocaine and had a blood alcohol concentration of .207 when he was arrested.

In rebuttal, the State presented expert testimony by Dr. Armour, who, after interviewing Defendant and reviewing the pertinent records and reports, opined that Defendant did not suffer from a mental condition relieving him of responsibility for his crime. Armour found significance in Defendant's behavior and statements after the attack. For example, Defendant said he cut himself because he wanted to die for stabbing Victim, indicating an understanding of the nature and wrongfulness of his actions. Further, Armour rejected the diagnosis of acute stress disorder because Defendant's behavior was unrelated to fire (*e.g.*, in contrast to a burn victim's intense fear of and overreaction to fire), and Defendant had functioned normally between the fire and the attack. In short, Armour concluded that Defendant was able to appreciate the wrongfulness of his conduct at the time of the attack.

As in point I, Defendant basically contends that, in submitting the issue to the jury, the trial court believed the wrong expert. Again here, such a claim is simply not cognizable under the appellate standard of review, which bears repeating. "The credibility and weight of testimony are for the fact-finder to determine." *Frazier*, 404 S.W.3d at 414. "The fact-finder may believe all, some, or none of the testimony of a witness." *Id.* We do not act as a "super juror" with veto powers but instead give great deference to the trier of fact. *Id.* Despite Defendant's experts' testimony to the contrary, Dr. Armour's testimony, viewed in a light most favorable to the verdict, constitutes adequate substantial evidence to support a finding that Defendant was not suffering from a mental disease or defect excluding responsibility when he stabbed his ex-wife. Point denied.

### III. *Juror Bloomfield*

█ Finally, Defendant submits that Jacqueline Bloomfield's service on the jury deprived him of a fair trial. Early in *voir dire*, Ms. Bloomfield claimed hardship in that she was responsible for the care of her elderly mother. Later in the process, she disclosed several past experiences with crime and law enforcement. She had witnessed three bank robberies; the worst occurred 12 years earlier in California, where the robber held patrons hostage at gunpoint for 90 minutes. Bloomfield nonetheless indicated that she could be fair. Additionally, Bloomfield's brother-in-law had been a police chief in Florida, but she indicated that she would not give police officers more credibility. Finally, Bloomfield and her son each had been convicted of driving under the influence in California many years earlier (15 and 25 years, respectively). Her son served two years in prison. Bloomfield said that he wasn't treated fairly but she could set aside her feelings. Defendant moved to strike Bloomfield for cause. The State objected. No ruling was made at that time. Later that day, Bloomfield reported that she had secured a friend to care for her mother and wanted to serve on the jury. She told the court, "I could do it [have a friend stay with her mother] the rest of the week if I needed. I want to do both. I want to take care of my mother *but I also want to serve the courts, too.*" During the bench conference on strikes for cause, the State and the court noted that Bloomfield was still present, defense counsel didn't repeat its motion to strike, and ultimately Bloomfield served on the jury.

Defendant doesn't challenge Bloomfield's presence on the basis of her past experiences, which she said she could set aside. Defendant only impugns Bloomfield's ability to focus her attention on the evidence presented despite her concerns for her mother at home. As a preliminary matter, the parties dispute whether this issue was properly preserved for appellate review. Defendant insists that it was, as defense counsel moved to strike and also included this issue in a post-trial motion. If the matter was preserved, then this court reviews for an abuse of discretion. *State v. Deck*, 303 S.W.3d 527, 535 (Mo. 2010). The State asserts that the issue wasn't preserved in that defense counsel neglected to reiterate the motion to strike during the bench conference. This court may review unpreserved errors affecting a defendant's substantial rights where manifest injustice has occurred. Rule 30. 20. Either way—whether we review for an abuse of discretion or plain error—we find no basis for reversal.

Defendant argues that Bloomfield should have been struck for cause because her alleged inability to focus on the proceedings rendered her unqualified to serve. Defendant cites no authority for

his proposition that a juror's perceived distractibility is cause to strike. The cases cited in his brief, inapposite here, examine whether jurors' *viewpoints* impeded their ability to find the facts based on the evidence and in accordance with the instructions.[1] Defendant here doesn't question Bloomfield's impartiality but rather her attention span. While we commend Defendant's faith in the concentration skills of other jurors comparatively, we recognize—and infinitely appreciate—that *all* jurors must abandon personal and professional responsibilities to fulfill this critical civic duty. Bloomfield's situation was hardly unique. Bloomfield clearly articulated her desire to serve and an ability to remain impartial, and nothing in the record casts doubt that she satisfied her oath. We find neither plain error nor an abuse of discretion. Point denied.

### Conclusion

The trial court's judgment is affirmed.

ROY L. RICHTER, P.J. and GLENN A. NORTON, J., concur.

---

1. Moreover, the appellate court affirmed in every instance. See *State v. Chanerl*, 793 S.W.2d 186 (Mo.App. W.D.1990) (trial court had no duty to inquire further where corrections officer indicated that he might have difficulty remaining impartial if the defendant were an inmate but he had no such bias against Chanerl); *State v. Price*, 787 S.W.2d 296 (Mo.App. W.D.1990) (trial court had no duty to inquire further where veniremember had personal knowledge of a witness but indicated that she could remain impartial); *State v. Deck*, 303 S.W.3d 527 (Mo.2010) (trial court properly struck venireperson who doubted whether she could sign a death verdict); *State v. Douglas*, 132 S.W.3d 251 (Mo. App. S.D.2004) (prosecutor's former representation of prospective juror did not warrant strike for cause, as nothing in his responses indicated an inability to remain impartial); *State v. Johnson*, 22 S.W.3d 183 (Mo.2000) (trial court properly struck veniremember who doubted his ability to follow the law and indicated that he would require more than proof beyond a reasonable doubt and wouldn't sign his name to a death verdict).